624 S.E.2d 815

**UNITED BANK, INC., As Trustee of the
Albert M. Price Trust, Plaintiff
Below, Appellee,**

v.

**Robert C. BLOSSER, et al., Defendants
Below, Appellants.**

**No. 32691.**

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 1, 2005.

Filed: Nov. 29, 2005.

Mark W. Kelley, Christopher J. Winton, Ray, Winton & Kelley, PLLC, Timothy A. Bradford, Bradford Law Offices, Charleston, for the Appellants.[1]

Bruce L. Stout, Scott K. Sheets, Cindy D. McCarty, Huddleston Bolen LLP, Huntington, for the Appellees.

Justice DAVIS delivered the Opinion of the Court.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.

Judge ARTHUR M. RECHT sitting by temporary assignment.

DAVIS, Justice.

This appeal arises from a declaratory judgment action involving a certain trust that was established by Dr. Albert M. Price, deceased. In this appeal, distant relatives of Dr. Price, Kenneth N. Dickens and Richard R. Lambert, Jr. (hereinafter referred to as "Dickens and Lambert"),[1] defendants below, and appellants herein, challenge various decisions made by the Circuit Court of Wood County. Most significantly, Dickens and Lambert challenge the circuit court's decisions that venue was proper in Wood County, and that the trustee of Dr. Price's trust had acted properly in removing a family preference from the trust. After considering the parties' briefs and oral arguments, the record submitted on appeal, and the pertinent authorities, we conclude that, because the record contains evidence supporting venue in Wood County, and no evidence to the contrary, the circuit court's ruling in this respect will be affirmed. Furthermore, we find that the trustee properly removed the family preference from the trust.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Dr. Albert M. Price was an optometrist who practiced for many years in Boone County, West Virginia. In 1957, Dr. Price, who was never married and had no children, established a revocable trust to first benefit his sisters, and to later provide college scholarships. According to the 1957 Trust document, the income generated by the Trust was to be distributed to Dr. Price's sisters during their lifetimes and, upon the death of the last surviving sister, the Trust was to be held and administered for charitable and educational purposes. Specifically, section IV(2) of the Trust expressly directed that

> [i]f there are no sisters surviving Grantor or upon the later death of the last surviving sister of Grantor, Trustee shall hold and administer the Trust Estate as a charitable trust for exclusively charitable and educational purposes. Trustee shall use and distribute the net income from the Trust Estate within its sole discretion for scholarship purposes, and it is Grantor's wish that the Trustee will grant scholarships to or otherwise aid needy and worthy boys and girls who wish to attend Wilson Junior College at Swannanoa, North Carolina (formerly known as Asheville Farm School). Grantor hopes that students residing in West Virginia will be given preference....

The Trust document further stated, at section IV(4), that "[t]his trust shall be a perpetual charitable trust...." Kanawha Banking and Trust (hereinafter referred to as "KB & T") was named as trustee.

In January, 1969, Dr. Price and KB & T entered a "SUPPLEMENTAL AGREEMENT OF TRUST," wherein certain provisions of the 1957 Trust were amended. Relevant to the instant action, Section IV(2) of the Trust was amended to state, in pertinent part:

> If there are no sisters surviving Grantor or upon the later death of the last surviving sister of Grantor, the Trustee shall use

---

1. While numerous members of Dr. Price's extended family were among the parties to the action below, Dickens and Lambert are the only appellants.

and distribute the net income in the form of annual scholarships to worthy boys and girls who are keenly interested in and capable of taking advantage of an opportunity for a college education. Said scholarships shall be awarded under reasonable rules and regulations to be prescribed by the Trustee, except that *first priority and consideration shall be given to qualified blood relatives of the Grantor,* regardless of the place of their residence, second consideration shall be given to qualified boys and girls residing in Boone County, West Virginia, and third consideration shall be given to qualified boys and girls residing in the other fifty-four counties of West Virginia. . . .

Dr. Price died in November, 1976. Prior to his death, Dr. Price had executed a pour-over will whereby his residuary estate, which was comprised of the bulk of his estate, would pass into the 1957 Trust, as amended in 1969 (hereinafter referred to as the 1957 Amended Trust). KB & T was named executor of Dr. Price's estate. Due to the Tax Reform Act of 1969, the portion of Dr. Price's estate that was designated to pour-over into the 1957 Amended Trust would not qualify for the federal estate tax charitable deduction as the Trust no longer qualified as a charitable trust, in part, because of the provision giving preference to Dr. Price's relatives in the award of scholarships.[2] Accordingly, in December, 1977, KB & T, as executor of Dr. Price's estate, filed a declaratory judgment action in the Circuit Court of Boone County seeking to determine whether Dr. Price's will could be reformed so his estate would qualify for the federal estate tax charitable deduction. In it's complaint, KB & T proposed that the tax results sought by Dr. Price could be obtained without sacrificing his other testamentary purposes by cre-

ating a second trust "similar in all respects to the 1957 [Amended] trust except for those changes which are needed to qualify the second trust as a charitable unitrust under applicable provisions of the Internal Revenue Code."[3] The second Trust would differ from the 1957 Amended Trust in that it would not contain a preference for Dr. Price's blood relatives.[4] KB & T explained in it's complaint, however, that Dr. Price's blood relatives could be favored in the awarding of scholarships from the 1957 [Amended] Trust. The Circuit Court of Boone County granted the relief sought by KB & T. In addition to approving the creation of a second trust, the Circuit Court of Boone County commented:

Under the terms of the 1957 [Amended] trust, the trustee is directed to make a preference in the awarding of scholarships to the blood relatives of Albert M. Price. Under the terms of the 1969 Tax Reform Act, a settlor of a qualified charitable unitrust cannot provide for the awarding of preferential treatment to his descendants. Accordingly, plaintiff's proposed second trust does not provide for a preference for the blood relatives of Albert M. Price but rather requires that they compete equally with all other candidates for the scholarships. As was stated earlier, the 1957 [Amended] trust will not be changed if the plaintiff's prayer for relief is granted, and accordingly, the trustee of the 1957 trust is free to make such preferential awarding of scholarships from the 1957 trust to the blood relatives of Albert M. Price as the trustee shall deem appropriate.

In 1986, United Bank, Inc., plaintiff below, Appellee (hereinafter referred to as "United Bank"), acquired KB & T and became trustee of both the 1957 Amended Trust and the second Trust (hereinafter referred to as "the 1978 Trust").[5] Thereafter, in August 1988,

---

**2.** The 1957 Amended Trust and Dr. Price's will were executed prior to the effective date of the Tax Reform Act of 1969.

**3.** In it's final order in the 1977 declaratory judgment action, the Circuit Court of Boone County acknowledge that

[a]t the time Albert Price executed these trust instruments, the remainder interest in the trust being dedicated to educational purposes would have been deductible for federal estate tax purposes as a charitable bequest. . . . Because of

massive changes in federal tax law occasioned by the 1969 Tax Reform Act, a remainder following a life estate is no longer a qualified charitable contribution deductible for federal estate tax purposes. *Int. Rev. Code* 2055(c).

**4.** There are a few other tax related differences between the two trusts, but those differences are not relevant to this appeal.

**5.** At the time United Bank acquired KB & T it was known as United National Bank.

Dr. Price's last surviving sister died and the scholarship phases of the 1957 Amended Trust and the 1978 Trust began. The 1957 Amended Trust did not qualify as a charitable trust due to the preference for blood relatives contained therein. Accordingly, United Bank cleansed the 1957 Amended Trust pursuant to W. Va.Code § 35–2–9 (1971) (Repl.Vol.2005), thereby removing the preference for blood relatives by deeming it a charitable trust and altering it accordingly. Because the 1957 Amended Trust, as cleansed in 1988, was now substantially the same as the 1978 Trust, United Bank combined the corpus of the two trusts (the combined trust will hereinafter be referred to as "the Price Trust").

In 2003, distant relatives of Dr. Price questioned United Bank regarding its administration of the 1957 Amended Trust, particularly its removal of the preference for blood relatives of Dr. Price in the award of scholarships. Thereafter, in July 2003, United Bank filed a Petition and an Amended Petition for Declaratory Judgment in the Circuit Court of Wood County, seeking a declaration that it had properly construed and administered the 1957 Amended Trust. United Bank named as defendants in the declaratory judgment action various relatives of Dr. Price, including appellants Dickens and Lambert. United Bank filed the action in Wood County based upon its claim that it administers the Trust from its Wood County headquarters, and that it also maintains the trust res from that location.

In September, 2003, Dickens and Lambert, along with other of the respondents to the Wood Count action, filed a motion to dismiss on grounds of improper venue in Wood County. Dickens and Lambert then filed their own complaint in the Circuit Court of Boone County, in October 2003, on behalf of themselves and those similarly situated. The complaint alleged various torts, including claims for breach of fiduciary duty, conversion, mismanagement, contempt, and a request for removal of trustee, with regard to United Bank's administration of the 1957 Amended Trust and its removal of the scholarship preference for blood relatives.

A hearing on the motion to dismiss the Wood County action was held on October 20, 2003. Following the hearing, by order entered December 2, 2003, the Circuit Court of Wood County denied the motion, finding venue in Wood County was proper under both W. Va.Code § 35–2–2 (1931) (Repl.Vol.2005) and W. Va.Code § 56–1–1 (2003) (Repl.Vol. 2005). The Circuit Court of Wood County also ordered, pursuant to Rule 42(b) of the West Virginia Rules of Civil Procedure, that the action filed by Dickens and Lambert in the Circuit Court of Boone County be transferred to Wood County, and ultimately ordered that the Boone County action be consolidated with United Bank's declaratory judgment action and treated as a counterclaim.

Finally, in February 2004, United Bank filed a motion seeking summary judgment with respect to its declaratory judgment action, and further seeking dismissal of Dickens and Lambert's counter claim. By order entered on July 21, 2004, the Circuit Court of Wood County granted summary judgment in favor of United Bank, and dismissed Dickens and Lambert's counter-claim. In granting summary judgment to United Bank, the Circuit Court of Wood County commented:

> This Court agrees with Petitioner [United Bank] that the term "blood relatives" is not ambiguous, but instead has an established legal meaning, which is restricted to those individuals who would have taken under the statutes of dissent and distribution in effect at the time of the grantor's death. This construction is required, as a matter of law. First, legal terms should be given their legal meanings, particularly legal terms in a document prepared by an attorney, as in this case. Second, if the term "blood relatives" is not given its legal meaning, the conveyance would be void from its very inception as violating the rule against perpetuities. Third, if the term "blood relatives" is not given its legal meaning, the conveyance at issue would be void for indefiniteness.

With respect to its dismissal of Dickens and Lambert's counter-claim against United Bank, the Circuit Court expressly found that Dr. Price's Trust, as cleansed by United Bank in 1988, is a public charitable trust. The Circuit Court then concluded that

> Regardless of whether Dickens and Lambert could successfully make allega-

tions concerning the administration of the trust, Dickens and Lambert (and any other person claiming to be a potential beneficiary of the Price trust) lack legal *standing* to assert a cause of action against the trustee of a charitable trust based upon such theories as breach of fiduciary duty, conversion, misrepresentation, contempt, or removal of trustee. First, they do not meet this Court's definition of "blood relative" for purposes of the Price trust's stated scholarship preference. Second, when a trust is a charitable trust, as the Price trust is, the right to monitor its proper enforcement is reserved at common law to a *public* official, such as the state attorney general.

Dickens and Lambert now appeal two orders from the Circuit Court of Wood County. First, they appeal the December 2, 2003 order denying their motion to dismiss for improper venue. In addition, they appeal the July 21, 2004, order granting summary judgment in favor of United Bank and dismissing their counter-claim against United Bank.

## II.

### STANDARD OF REVIEW

■ Dickens and Lambert herein appeal two separate orders rendered below. First, they appeal the circuit court's order denying their motion to dismiss for improper venue. Heretofore, this Court has not established the proper standard for our review of such a ruling. It has been recognized, however, that "[r]eview of a trial court's decision on a motion to dismiss for improper venue is for abuse of discretion." Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(3)[2], at 281 (2002) (footnote omitted) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996); *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441 (7th Cir.1993); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir.1992); *Howell v. Tanner*, 650 F.2d 610 (5th Cir.1981)). *See also Palmer v. Braun* 376 F.3d 1254, 1257 (11th Cir.2004) ("We review for abuse of discretion a district court's denial of a motion to transfer or dismiss for lack of venue." (citation omitted)); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004) ("We review all questions concern-

ing venue under the abuse of discretion standard." (citation omitted)); *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 806 (7th Cir.2002) ("This court ordinarily defers to a district court's venue determinations unless the district court has abused its discretion." (citation omitted)). Accordingly, we now expressly hold that this Court's review of a trial court's decision on a motion to dismiss for improper venue is for abuse of discretion.

■ Dickens and Lambert also challenge the circuit court's order granting summary judgment in favor of United Bank. Our standards for summary judgment are well established. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Accordingly, in undertaking our plenary review, we apply the same standard for granting summary judgment as a circuit court would. That standard holds that:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*. Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*. Mindful of these principles, we address the issues raised on appeal.

## III.

### DISCUSSION

#### A. Venue

As a threshold issue, we address Dickens and Lambert's claim that the circuit court erred in denying their motion to dismiss for improper venue in Wood County. Dickens and Lambert assert that the evidence did not

support a finding that venue was proper in Wood County, we disagree.

■■ In addressing a question of venue in a civil action, we begin with W. Va.Code § 56-1-1, West Virginia's general venue statute. Pertinent to the instant action, W. Va. Code § 56-1-1 states, in part,

(a) Any civil action or other proceeding, *except where it is otherwise specially provided,* may hereafter be brought in the circuit court of any county:

(1) Wherein any of the defendants may reside or the cause of action arose, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered, or some part thereof, is; . . . .

(Emphasis added). Subsection (a) of W. Va. Code § 56-1-1 contains a plainly worded exception to the general venue provisions "where it is otherwise specially provided." "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970).[6] The circuit court of Wood County found that venue in this matter was "otherwise specially provided" in W. Va.Code § 35-2-2. W. Va.Code § 35-2-2 states in relevant part that

whenever the objects of any such trust shall be undefined, or be so uncertain as not to admit of specific enforcement, or literal execution, . . . a suit in chancery may be instituted, by any party interested, *in the circuit court of the county where the trust subject, or any part thereof is, . . .*

A primary issue in the litigation before the Circuit Court of Wood County was the meaning of the term "blood relatives" as that term is used to identify those potential beneficiaries of Dr. Price's 1957 Amended Trust who are to receive a preference. Accordingly, we find that this is an action under W. Va.Code § 35-2-2 and, therefore, venue is proper "in the circuit court of the county where the trust subject, or any part thereof is." W. Va.Code § 35-2-2.

■ Dickens and Lambert complain that the circuit court merely accepted United Bank's assertion, without supporting evidence, that the trust subject is located in Wood County. On the contrary, however, following the hearing on Dickens and Lambert's motion to dismiss for improper venue, but before the circuit court rendered it's order on this issue, United Bank filed an affidavit by Jane Sargent, Vice President and Trust Division Manager of United Bank. Ms. Sargent's affidavit, which is included in the record submitted on appeal, stated that the Price Trust "is assigned to and administered by Tracy Wharton, Assistant Vice President and Trust Officer at United Bank's Parkersburg, Wood County, West Virginia location; and . . . the assets of the Albert M. Price Trust are located at United Bank's Parkersburg, Wood County, West Virginia facility." Thus, there is evidence in the record, which was before the circuit court prior to its rendering of a decision as to venue, establishing that the assets of the Trust are located in Wood County. Furthermore, we note that Dickens and Lambert provided no evidence on the record to dispute this fact. "Courts of record can speak only by their records, and what does not so appear does not exist in law." Syl. pt. 3, *Hudgins v. Crowder & Freeman, Inc.,* 156 W.Va. 111, 191 S.E.2d 443 (1972). Accord Syl. pt. 4, *State ex rel. Mynes v. Kessel,* 152 W.Va. 37, 158 S.E.2d 896 (1968). See also Syl. pt. 5, in part, *Parkway Fuel Serv., Inc. v. Pauley,* 159 W.Va. 216, 220 S.E.2d 439 (1975) ("A court of record speaks only through its records[.]"). In this case, there is simply nothing in the record upon which we can conclude that the circuit court's denial of Dickens and Lambert's motion to dismiss was improper.

### B. Summary Judgment

Dickens and Lambert contend that the circuit court erred in granting summary judgment in favor of United Bank. They argue that this case turns on the interpretation of the term "blood relatives." The Circuit Court of Wood County gave three grounds for ruling in favor of United Bank on this issue and granting summary judgment in United Bank's favor in the declarato-

---

**6.** *Accord,* Syl. pt. 4, *Charter Communications VI, PLLC v. Community Antenna Serv., Inc.,* 211 W.Va. 71, 561 S.E.2d 793 (2002); Syl. pt 4, *Syncor Int'l Corp. v. Palmer,* 208 W.Va. 658, 542 S.E.2d 479 (2001).

ry judgment action: (1) "legal terms should be given their legal meanings, particularly legal terms in a document prepared by an attorney, as in this case"; (2) "if the term 'blood relatives' is not given its legal meaning, the conveyance would be void from its very inception as violating the rule against perpetuities"; and (3) "if the term 'blood relatives' is not given its legal meaning, the conveyance at issue would be void for indefiniteness."

If the circuit court is correct that affording the term "blood relatives" its popular meaning would cause the conveyance to be void as violating the rule against perpetuities, then an analysis of the meaning that should be given the term would, for the purposes of this case, be merely an academic exercise that would not result in Dickens and Lambert obtaining the relief they seek. Dickens and Lambert argue, however, that according to the case of *Gallaher v. Gallaher,* 106 W.Va. 588, 146 S.E. 623 (1929), Dr. Price's trust may contain a preference for family members without violating the rule against perpetuities.[7] We agree.

 The *Gallaher* Court was asked to determine the validity of a bequest for a scholarship for "educating young men in Lafayette College at Easton, Pennsylvania." 106 W.Va. at 589, 146 S.E. at 623. The trust was to generally benefit disadvantaged young men from Marshall and Ohio Counties, West Virginia, and, and Belmont County, Ohio, but further provided that sons and descendants of certain identified members of the grantor's family "shall have first opportunity to receive such education." *Id.* It was argued before the Court that the trust was a mixed trust, with that portion benefitting sons and descendants of certain of the grantor's relatives creating a private trust, while that portion benefitting disadvantaged young men from Marshall and Ohio Counties, West Virginia, and Belmont County, Ohio, created a public trust. It was further argued that the two trusts were inseparable; and that because the private portion of the trust violated the rule against perpetuities, the entire trust was unenforceable. This Court disagreed. It looked to "Section 3, Chapter 57 of the Code, as amended by Chapter 46, Acts of 1923." *Gallaher,* 106 W.Va. at 590, 146 S.E. at 624. The *Gallaher* Court observed that the statute provided, in relevant part, that:

> "Where any conveyance of land has been or shall be made to trustees for the use of any college, academy, high school, or other seminary of learning, or for the use of any society of free masons, odd fellows, sons of temperance or good templars, or for any orphans asylum, children's home, or other benevolent association or purpose; or if, without the intervention of trustees, such conveyance has been made since the thirty-first day of March, one thousand eight hundred and forty-eight, or shall be hereafter made for such use or purpose, the same shall be valid, and the land shall be held for such use or purpose only."

106 W.Va. at 590, 146 S.E. at 624. Considering this statute, along with various cases from other jurisdictions upholding educational trusts that included familial preferences, the *Gallaher* Court held:

> A devise or bequest for the founding of scholarships at Lafayette College, Easton, Pennsylvania, in favor of young men of poor parents residing in Marshall and Ohio [C]ounties, West Virginia, and Belmont [C]ounty, Ohio, qualified by a provision in the will giving preference of admission to sons and descendants of certain relatives of the testator, is a valid charitable or benevolent trust, under chapter 57, Code.

Syl., 106 W.Va. 588, 146 S.E. 623. The statute relied upon in *Gallaher* has been modified only slightly, and is now found at W. Va.Code § 35-2-1 (1923) (Repl.Vol.2005), which states:

> When any conveyance, dedication or devise of land, or transfer, gift or bequest of personal property, has been made or shall be made to trustees for the use of any university, college, academy, high school, seminary, or other institution of learning; or for the use of any benevolent, fraternal, patriotic, literary, temperance, or charitable society, order, lodge or association, or

---

7. In 1992, West Virginia adopted the Uniform Statutory Rule Against Perpetuities. *See* W. Va.

Code § 36-1A-1 *et seq.*

labor union or similar association or brotherhood of craftsmen or employees, or any local branch thereof, or for the use of any orphan asylum, children's home, house of refuge, hospital, or home or asylum for the aged or incurables, or the afflicted in mind or body, or for the use of any other benevolent or charitable institution, association or purpose; or if, without the intervention of trustees, such conveyance, dedication or devise of land, or transfer, gift or bequest of personal property, has been made and has not been declared void in any suit or action, or has not been treated and acted upon as void under the law heretofore existing, or shall be hereafter made for any such use or purpose, *the same shall be valid and such land or property, as well as any subsequently acquired by purchase or otherwise in furtherance of such use or purpose, shall be held for such use or purpose only.*

Following the analysis in *Gallaher* and, applying W. Va.Code § 35–2–1, we now hold that a trust that is created to provide educational scholarships to an indefinite class of beneficiaries,[8] but which also contains a preference for certain family members of the grantor, is a valid charitable trust pursuant to W. Va.Code § 35–2–1 (1923) (Repl.Vol. 2005),[9] and is exempt from the application of the rule against perpetuities.[10] Accordingly, notwithstanding the inclusion of a family preference, Dr. Price's 1957 Amended Trust is a charitable trust that is exempt from the Rule Against Perpetuities.

This does not end our analysis, however. The fundamental issue in this case is whether United Bank acted properly when it altered Dr. Price's 1957 Amended Trust to conform with the provisions of W. Va.Code § 35–2–9(a) (1971) (Repl.Vol.2005). Because we have determined that Dr. Price's 1957 Amended Trust is a charitable trust, we now find ourselves squarely within that statute, which states:

(a) *Distribution of income by trust which is deemed a private foundation; prohibitions as to such private foundation.*—Every trust, receiving a gift, grant, devise or bequest, which is deemed to be a private foundation as defined in section 509 of the Internal Revenue Code of 1954, *unless its governing instrument expressly includes specific provisions to the contrary,* shall distribute its income for each taxable year at such time and in such manner as not to subject such trust to tax under section 4942 of the Internal Revenue Code, and such trust shall not engage in any act of self-dealing as defined in section 4941(d) of the Internal Revenue Code, retain any excess business holdings as defined in section 4943(c) of the Internal Revenue Code, make any investments in such manner as to subject the trust to tax under section 4944 of the Internal Revenue Code, *or make any taxable expenditures as defined in section 4945(d) of the Internal Revenue Code.*

W. Va.Code § 35–2–9(a) (Emphasis added).[11] Under the plain language of the foregoing

---

8. "One of the essential elements of a charitable or benevolent trust is that it be certain in its object and as to the class of persons, but indefinite as to the individuals to be benefitted." Syl. pt. 1, *Mercantile Banking & Trust Co. v. Showacre,* 102 W.Va. 260, 135 S.E. 9 (1926).

9. It is important to note, however, that this holding clearly has no impact on the question of whether a trust qualifies for tax exempt status under the Internal Revenue Code.

10. *See, e.g., In re Teubert's Estate,* 171 W.Va. 226, 234 n. 4, 298 S.E.2d 456, 464 n. 4 (1982) ("[T]he charitable portion [of the trust] is exempt from the rule [against perpetuities]." citing *Mercantile Banking & Trust Co. v. Showacre,* 102 W.Va. 260, 135 S.E. 9 (1926)). *See also* 15 Am.Jur.2d *Charities* § 19, at 26 (2000) ("A gift for charitable purposes of permanent interest and benefit to the public may be perpetual in its duration and is not

within the rule against perpetuities."); Restatement (Second) of Trusts § 365 (1959) ("A charitable trust is not invalid although by the terms of the trust it is to continue for an indefinite or an unlimited period."). Furthermore, under the West Virginia Uniform Statutory Rule Against Perpetuities, the statutory rule does not apply to "[a] property interest, power of appointment, or arrangement that was not subject to the common-law rule against perpetuities." W. Va.Code § 36–1A–4(7) (1992) (Repl.Vol.2005).

11. Pursuant to its express terms, this statute applies to Dr. Price's 1957 Amended Trust for the taxable years beginning on and after January 1, 1972. W. Va.Code § 35–2–9(a) ("This subsection shall apply to ... any charitable trust established before January one, one thousand nine hundred seventy, only for its taxable years beginning on and after January one, one thousand nine hundred seventy-two.").

statute,[12] Dr. Price's 1957 Amended Trust must be administered in accordance with certain provisions of the Internal Revenue Code, unless the trust's "governing instrument expressly includes specific provisions" stating that it is not a private foundation.[13] *Id.* Such is not the case here. Dr. Price's 1957 Amended Trust expressly states, at paragraph IV(4):

> This Trust shall be a perpetual charitable trust, but in the event it becomes necessary for any reason to terminate the trust, the assets shall at the direction of the Circuit Court of Kanawha County, West Virginia, be applied towards carrying out the purposes of the trust and for the use of such charities qualifying for tax exemption under the Internal Revenue laws of the Untied States.

The foregoing statement clearly reflects that Dr. Price intended his trust to exist for charitable purposes and desired to avoid unfavorable tax consequences, and there is nothing in the record before this Court to indicate otherwise. Because Dr. Price's 1957 Amended Trust does not contain provisions stating it is not to be managed as a private foundation, we look to the remaining provisions W. Va. Code § 35–2–9(a) to determine if United Bank acted properly in removing the preference for certain family members. We find that they did.

▆▆▆ Pertinent to this inquiry is the directive in W. Va.Code § 35–2–9(a), stating that the trust "*shall* not ... make any taxable expenditures as defined in section 4945(d) of the Internal Revenue Code." Because this directive utilizes the term "shall," it is mandatory. " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' " *Retail Designs, Inc. v. West Virginia Div. of Highways*, 213 W.Va. 494, 500, 583 S.E.2d 449, 455 (2003) (quoting Syl. pt. 1, *Nelson v. West*

*Virginia Pub. Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982)). Accordingly, we look next to section 4945(d) of the Internal Revenue Code, to ascertain what "taxable expenditures" are prohibited. Internal Revenue Code § 4945(d) states in relevant part that

> For purposes of this section, the term "taxable expenditure" means any amount paid or incurred by a private foundation -
>
> . . . .
>
> (3) as a grant to an individual for travel, *study*, or other similar purposes by such individual, unless such grant satisfies the requirements of subsection (g),

26 U.S.C. § 4945(d) (1988) (2000 ed.) (emphasis added). In turn, subsection (g) of section 4945 states, in relevant part, that "[s]ubsection (d)(3) shall not apply to an individual grant awarded on *an objective and non-discriminatory basis* pursuant to a procedure approved in advance by the Secretary . . . ." 26 U.S.C. § 4845(g). Under the foregoing statutory scheme, the question to be answered is whether the family member preference contained in Dr. Price's 1957 Amended Trust violates the prohibition against taxable expenditures as defined above. This question has been resolved.

▆▆▆ The IRS has issued a revenue ruling holding that "[s]cholarship grants awarded under a procedure giving preference to family members or relatives of the trust's grantor are not awarded on an objective and nondiscriminatory basis as required by section 4945(g) of the [Internal Revenue] Code." Rev. Rul. 85–175, 1985–2 C.B. 276, 1985–43 I.R.B. 12, 1985 WL 287239 (1985). Because such an expenditure would not satisfy the requirements of section 4945(g), it would be a "taxable expenditure" pursuant to section 4945(d) and would, thus, violate W. Va.Code § 35–2–9. Accordingly, any expenditure

---

**12.** "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). *Accord*, Syl. pt. 4, *Charter Communications VI, PLLC v. Community Antenna Serv., Inc.*, 211 W.Va. 71, 561 S.E.2d 793 (2002); Syl. pt 4, *Syncor Int'l Corp. v. Palmer*, 208 W.Va. 658, 542 S.E.2d 479 (2001).

**13.** Stated in its simplest terms, a "private foundation" is "[a] foundation that is supported privately rather than publicly, and that exists to advance charitable or educational projects. A private foundation is generally exempt from taxation. IRC (26 USCA) § 509." Blacks Law Dictionary 666 (17th ed 1999).

from Dr. Price's 1957 Amended Trust in the form of a scholarship giving a preference to one of his "blood relatives," regardless of how that term is defined, would be a "taxable expenditure" violative of W. Va.Code § 35-2-9. For this reason, we find that, not only was it proper and in accordance with Dr. Price's wishes that the tax offending family preference be removed from his 1957 Amended Trust, it was statutorily required.[14] As there are no questions of fact related to this dispositive issue, the circuit court's grant of summary judgment [15] in favor of United Bank was appropriate.[16]

## IV.

### CONCLUSION

For the reasons explained in the body of this opinion, the orders of the Circuit Court of Wood County dated December 2, 2003, denying Dickens and Lambert's motion to dismiss for improper venue, and July 21, 2004, granting summary judgment in favor of United Bank and dismissing their complaint against United Bank, are affirmed.

Affirmed.

---

**14.** Although we have approved the removal of the family preference from Dr. Price's 1957 Amended Trust, we note that there is absolutely nothing prohibiting his family members from applying for scholarships under the trust.

**15.** "In *Williams v. Precision Coil, Inc.*, [194 W.Va. 52, 459 S.E.2d 329 (1995)], we acknowledged that a grant of summary judgment may be sustained on any basis supported by the record. Thus, it is permissible for us to affirm the granting of summary judgment on bases different or grounds other than those relied upon by the circuit court." *Gentry v. Mangum*, 195 W.Va. 512, 519–520, 466 S.E.2d 171, 178 (1995) (footnote omitted).

**16.** Dickens and Lambert raise additional errors that we do not reach. They assert that the circuit court erred in dismissing their counterclaims asserting various torts against United Bank arising from it's removal of the family preference from Dr. Price's 1957 Amended Trust. However, our determination that United Bank properly removed the family preference from the 1957 Amended Trust renders those issues moot. Furthermore, because our resolution of this matter did not require an interpretation of the term "blood relative," we need not address the claim of Dickens and Lambert that the doctrines of Judicial Estoppel and Collateral Estoppel operated to prevent the circuit court from interpreting that term, or that the circuit court improperly determined that Patricia Milam was the sole surviving "blood relative" of Dr. Price.