# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**April 22, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**NEW CHINA RESTAURANT, INC.,**
**and PHILIP DY CHIN,**
**Plaintiffs Below, Petitioners**

**v.) No. 23-ICA-175**      (Cir. Ct. of Kanawha Cnty. Case No. 21-C-161)

**CITY OF CHARLESTON,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners New China Restaurant, Inc., and Philip Dy Chin (collectively "New China") appeal the March 31, 2023, order from the Circuit Court of Kanawha County granting Respondent City of Charleston's ("City") motion for summary judgment. The City filed a response.[1] New China filed a reply. The issue on appeal is whether the circuit court erred in finding that there were no genuine issues of material fact related to New China's various causes of action related to the City's demolition of its building after it was determined that the building was a threat to public safety.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case centers on the City's demolition of a two-story brick building after it was determined that the building was unsafe and a danger to the public. Mr. Chin owned the building and the former New China Restaurant which was operated therein. Following demolition, Mr. Chin retained ownership of the lot where the building was situated. It is undisputed that on February 17, 2020, several hundred bricks fell from the building to the street and sidewalk below. The City immediately secured the property to avoid injury to persons and damage to nearby property by erecting barriers to prevent pedestrians and vehicles from entering the area. An inspection by the City's code enforcement agency concluded that the building or its foundation was likely to suffer a partial or whole collapse.

---

[1] On appeal, New China is represented by Richard J. Lindroth, Esq. The City is represented by Kevin Baker, Esq., and Jason A. Neal, Esq.

1

Mr. Chin was promptly notified by the City that the building's prolonged neglect and subsequent deterioration posed a public safety hazard. New China retained legal counsel and hired a professional engineer who performed an independent structural evaluation of the building on February 19, 2020.[2] This evaluation concluded that the building was dilapidated and that immediate and extensive repairs were necessary to ensure the safety of the public and to prevent further collapse of the building's structural system. According to the engineer, those required repairs included: removal of all or a significant portion of the veneer brick, dismantling the parapet walls, and further anticipated repairs of other structural damage that was not visible at the time of the evaluation.

On February 21, 2020, Mr. Harmon, the City's Building Commissioner, provided New China with a final written notice to take the actions as recommended in the independent evaluation to prevent the City's demolition of the building as a matter of public safety. Mr. Chin was given until February 24, 2020, to take corrective action. It appears from the record that New China hired a professional brick mason to remove the fallen and loose bricks from the building's exterior but made no further effort to address the corrective actions required by the City.[3]

When New China failed to take sufficient corrective action, the City notified New China of its intent to demolish the building due to the threat it posed to the public. This notification was provided to New China's legal counsel, but the final authorization to demolish the building was given by Mr. Harmon, the City's Building Commissioner. *See generally* W. Va. Code § 8-12-16 (2017) (designating a municipality's code enforcement agency as the entity with authority to take corrective action);[4] Charleston, W. Va., Code ch. 14, art. vi, § 14-253 (2017) (stating a code enforcement official has authority to authorize the demolition of an unsafe building).

On February 25, 2020, New China filed a motion seeking a temporary restraining order and preliminary injunction in the Circuit Court of Kanawha County. By order entered on February 25, 2020, the circuit court denied the motion. New China did not appeal this ruling. The City demolished the building shortly thereafter and, pursuant to state and

---

[2] New China was represented by different counsel until the demolition of the building. New China retained its current counsel to file the complaint and this appeal.

[3] On appeal, New China argues that a City official told them that the brick removal was sufficient corrective action to temporarily halt the building's demolition. However, as explained below, we are not persuaded that this assertion creates a genuine issue of material fact to justify reversing the circuit court's entry of summary judgment.

[4] We acknowledge that West Virginia Code § 8-12-16 was amended, effective June 5, 2020. However, because the events giving rise to this case occurred prior to the effective date of those amendments, the 2017 version of the statute applies.

municipal code, the City placed a demolition lien on the real property where the building was located. W. Va. Code § 8-12-16(g); Charleston, W. Va., Code ch. 14, art. vi, § 14-257 (2017).

Nearly a year after the demolition, on February 23, 2021, New China filed the underlying complaint against the City, seeking damages based upon a variety of claims related to the City's demolition of the building.[5] The City filed its answer and a counterclaim, seeking a judgment against New China for the outstanding balance of the demolition lien.[6] On October 7, 2022, the City filed its motion for summary judgment on New China's claims and its counterclaim. On March 31, 2023, the circuit court entered the order now on appeal. That order granted the City summary judgment on both New China's complaint and the City's counterclaim.

In its order, the circuit court addressed New China's contention that the City did not show "that the building was an imminent hazard"; that the "threat to public safety was more imagined than real"; that the City made "no showing that the structure required demolition as opposed to being repaired and rehabilitated"; that the City "breached its duty to use the least restrictive alternative" regarding the building; and that the City "effectively condemned the structure without due process of law" and demolished the structure without appropriate authority. The circuit court found that West Virginia Code § 8-12-16 (2017) granted the City the plenary authority to adopt ordinances to regulate "the repair, alteration, improvement, closing, demolition, or removal of any structure, dwelling, or building that is determined by a code official to be unsafe, unsanitary, dangerous or detrimental to the public safety or welfare." Accordingly, the circuit court determined that the City adopted such ordinances and that it had the authority to do so. *See* Charleston, W. Va., Code ch. 14, art. vi, §§ 14-251 to -260.

The circuit court found summary judgment was appropriate on this issue because the City's preliminary investigation and the independent evaluation obtained by New China showed that the building was unsafe, dangerous, and detrimental to public safety. Further, the City had complied with applicable state and municipal codes and made reasonable efforts to obtain New China's consent before taking action against the building. Specifically, it was concluded that the City's code enforcement agency permitted New China the opportunity to obtain an independent evaluation, provided them with a final

---

[5] Notably, the complaint did not set forth specific causes of action, but rather, its paragraphs advanced various claims for damages based upon what it considered to be an erroneous conclusion by the City that the building posed an imminent hazard and required demolition.

[6] The City also made a counterclaim seeking a judgment for New China's unpaid business and occupation taxes ("B&O"). However, the B&O claim was subsequently dismissed by agreed order.

3

written notice of the actions that were necessary to abate the unsafe conditions and afforded New China a reasonable opportunity to remedy the deficiencies. *See* W. Va. Code § 8-12-16(f); Charleston, W. Va., Code ch. 14, art. vi, §§ 14-255 and -259 (2017). Further, when New China did not take appropriate remedial action, it was determined that appropriate authorization was given to demolish the building.

Next, the circuit court granted summary judgment on New China's argument that the City did not comply with its own code because the condition of the building did not meet the required definition of being "unsafe, unsanitary, dangerous[,] or detrimental to the public safety or welfare." Charleston, W. Va., Code ch. 14, art. vi, § 14-255 (2017) (requiring "a determination by the code enforcement agency that a structure, dwelling, or building is unsafe, unsanitary, dangerous[,] or detrimental to the public safety or welfare" prior to a municipality taking corrective action). The circuit court rejected this argument, finding that City's code defined "unsafe, unsanitary, dangerous[,] or detrimental to the public safety or welfare" to include:

> The structure, dwelling, or building, or part of the building or structure, because of dilapidation, deterioration, decay, faulty construction, the removal or movement of some portion of the ground necessary for the support, or for any other reason, is likely to partially or completely collapse, or some portion of the foundation or underpinning of the building or structure is likely to fail or give way[.]

Charleston, W. Va., Code ch. 14, art. vi, § 14-252(5) (2017). *See also* W. Va. Code § 8-12-16(a)(4)(e) (stating that a building is unsafe for the public when, "because of dilapidation, deterioration . . . or for any other reason . . . [it] is likely to partially or completely collapse[.]"). The circuit court concluded that the results of the City's and New China's evaluations of the building met the City's code definition and, thus, satisfied its code requirements.

As a final matter, the circuit court's order addressed the counterclaim for the demolition lien. The circuit court found that West Virginia Code § 8-12-16(g) and chapter 14, article six, section 257 of the City's code authorized the imposition of such liens, and that the City had provided New China with an itemized list of the charges it incurred while demolishing the building which were supported by affidavit. It was further determined that the City had complied with the requirements for filing a municipal lien under West Virginia Code § 38-10C-1 (1943). The circuit court concluded that there was no genuine issue of material fact as to the amount of costs incurred and that summary judgment was

4

appropriate. The circuit court awarded the City judgment for $58,539.54, plus interest. This appeal followed.[7]

Our review of a circuit court's entry of summary judgment is *de novo*. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994). In conducting a *de novo* review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser,* 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted).

On appeal, New China raises two assignments of error. First, it argues that there remain genuine issues of material fact as to whether the City acted reasonably in its demolition of the building. Framing this as the "core factual issue in this case," New China asserts this issue requires resolution of eight material issues:

(1) The reasonableness of the City's decision to destroy [New China]'s property given that there was no imminent risk of harm to anyone. (2) The reasonableness of the time given by the City for [New China] to make repairs. (3) Whether the decision to destroy the property was made in accordance with the City's ordinances. (4) Whether the City should be estopped from denying that [New China] fully complied with all of the Code official's orders and that the Code official directed [New China] to do nothing more until further testing was completed. (5) Whether the City accorded [New China] with due process. (6) Whether the condition of [New China]'s building presented an imminent risk of danger to the public. (7) Whether any reports by anyone supported the City's decision to destroy [New China]'s building. (8) Whether the lien filed by the City is accurate and truthful.

However, New China's brief failed to further develop these points on appeal. Instead, New China's entire argument on this issue is:

---

[7] The circuit court also granted summary judgment on New China's claims for just compensation and slander of title. However, those findings were not challenged in this appeal.

It is clear from the timetable and from the affidavits that [New China] cleaned up the fallen bricks, employed a professional engineer to inspect the building and followed the Code Enforcement Officer's instructions regarding the subject building until [they were] told by that official to cease these actions, pending further testing. It is also clear that the building, although in a rundown state, did not present any danger to the public.

Although the Code official is the person charged by the above ordinance in making the decision regarding destruction of property, in this case that decision came from outside of the Code enforcement agency. Practically speaking, this means the destruction of [New China]'s property was, by the words of the City's ordinance, an *ultra vires* act.

Although the building was in need of repairs, the City could have and should have ordered [the repairs] to be made under the above ordinance. Thus, there is a question of fact whether the City acted reasonably in destroying the building . . . . Clearly, the City did not choose the least restrictive alternative, which it is bound by law to do.

This argument fails to cite to any specific authority or to the appellate record to support New China's contention that the circuit court's entry of summary judgment was in error. Despite arguing that there are outstanding genuine issues of material fact in this case, New China's supporting argument is cursory, at best. For example, New China fails to set forth the content of the affidavits and articulate how those documents create issues of material fact, fails to provide specific facts or legal analysis to accompany their *ultra vires* claim, and fails to identify which ordinance(s) apply and how the City failed to comply with the same. Given the absence of a well-developed argument, we are unable to address New China's contentions on this issue. *See State, Dep't of Health and Human Res. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" (internal citations omitted)).

The circuit court found that the City acted within its authority when it demolished the building and placed a lien on the real property. We agree. West Virginia Code § 8-12-16 clearly grants municipalities the plenary authority to regulate the repair, closing, and demolition of structures which are determined to endanger the public's safety. The statute also sets forth several requirements and procedural protections that an adopted ordinance must adhere to. Among them, a municipality has the plenary authority to take corrective action against an unsafe structure so long as proper notice was provided to the building's owner and reasonable efforts were made to obtain the consent of the building's owner prior to taking such action. W. Va. Code § 8-12-16(f). Likewise, a municipality is authorized to require an owner to pay for the costs associated with such corrective action, and file a lien

against the real property. W. Va. Code § 8-12-16(g). It is uncontroverted that the City's correlating ordinances mirror much of the statutory language and comply with requirements of this overall statutory scheme. *Compare* W. Va. Code § 8-12-16, *with* Charleston, W. Va., Code ch. 14, art. vi, §§ 14-251 to -260.

Here, it is undisputed that two separate evaluations of New China's building revealed it to be in an advanced stage of structural deterioration and on the verge of whole or partial collapse, which required immediate and extensive repairs to abate the risk that the building posed to the safety of the public. The record establishes that New China was provided proper notice of these conditions and informed of the necessary corrective actions they were to undertake. Despite the City's reasonable efforts, New China only took minimal remedial action.[8] Therefore, when New China did not affirmatively address those dangers in a timely manner, the City, through the lawful exercise of its lawful authority, demolished the building to protect the public and lawfully placed a lien on the real property for the costs associated with the demolition. We conclude that the City acted within its authority and, thus, find no basis to reverse the circuit court's summary judgment order.

As their final assignment of error, New China contends that the circuit court erred by finding its February 25, 2020, order denying New China's request for a temporary injunction was res judicata for the purposes of summary judgment.[9] We find no merit in this argument. Like their first assignment of error, this argument is also without supporting authority or citation to the record. Aside from mentioning the temporary injunction as part of the procedural history of this case, we find that nothing within the circuit court's summary judgment order suggests that it attributed any preclusive effect to that prior ruling to grant summary judgment. Moreover, substantively, New China attempts to reargue the merits of its temporary injunction motion. However, the circuit court's denial of the temporary injunction was not appealed, has become a final order, and is outside the scope of this appeal.[10]

---

[8] We acknowledge that the deadline imposed by the City gave New China limited time to make meaningful repairs to the structure; however, such time frame was necessary given the serious safety concern the structure presented.

[9] New China premises this argument on an e-mail that was sent by the presiding judge's law clerk to counsel for the City and New China's former counsel, informing the parties that the court was granting the motion for summary judgment and providing a detailed explanation for its ruling. The e-mail directed the City's counsel to prepare a final order for the court's consideration. The contents of the e-mail are irrelevant to this appeal. *See State v. Keefer*, 247 W. Va. 384, 388, 880 S.E.2d 106, 110 (2022) (noting that for the purposes of appellate review, a court speaks only through its written orders).

[10] New China also argues that the presiding circuit court judge exhibited a bias against it. However, this is a moot issue because the Chief Justice of our Supreme Court of

Accordingly, we find no error and affirm the circuit court's March 31, 2023, order.

Affirmed.

**ISSUED:** April 22, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen


Judge Daniel W. Greear, not participating

---

Appeals entered an administrative order on March 30, 2023, denying an earlier motion by New China to disqualify the same judge on similar grounds. Further, pursuant to Rule 17.01 of the West Virginia Trial Court Rules, such disqualification matters are exclusively reserved for the Chief Justice of our Supreme Court of Appeals.