# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**July 1, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**R & D TOWING, INC.,**
**Plaintiff Below, Petitioner**

**v.) No. 23-ICA-243**    (Cir. Ct. Greenbrier Cnty. Case No. CC-13-2018-C-83)

**PLAZA INSURANCE COMPANY,**
**Defendant Below, Respondent**


## MEMORANDUM DECISION

Petitioner R & D Towing, Inc. ("R & D") appeals the Circuit Court of Greenbrier County's May 8, 2023, Order Granting Motion for Summary Judgment that dismissed Petitioner's claims with prejudice. Respondent Plaza Insurance Company ("Plaza") filed a timely response.[1] No reply was filed. The issue on appeal is whether the circuit court erred in granting summary judgment because material issues of fact existed.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from a claim filed by R & D under a policy of insurance issued by Plaza. R & D owns and operates a towing company, storage yard, and garage in White Sulphur Springs, West Virginia. Ron Cook is the owner and president of R & D. On June 23, 2016, a major flood event damaged vehicles and equipment located on property owned by R & D. Some of the vehicles and equipment on the property were owned by entities other than R & D, including, but not limited to, two business entities, Danron, Inc., ("Danron") and Machinery Transport, Inc., ("Machinery Transport") which were both owned previously, in part, by Ron Cook. R & D filed a claim for all the damaged vehicles and equipment on its property, regardless of ownership, under its Plaza Policy No. PTOWK007120-00 ("the Policy"). Relevant to this case are the following:

---

[1] R & D Towing, Inc. is represented by Anthony M. Salvatore, Esq. Plaza Insurance Company is represented by Michael P. Markins, Esq.

1

- 2000 Peterbilt (VIN 1XP5DB9X3YN507638) – owned by Danron but initially claimed as property owned by R & D
- 2006 Ford F-550 (VIN 1FDAF57P66EB61270) – owned by Danron but initially claimed as property owned by R & D
- CAT Forklift Model V50B (Serial No. 81M3704) – owned by Danron
- CAT Forklift Model V800 (Serial No. 31S396) – owned by Danron
- Sulair Skid Mounted Diesel Air Compressor Model 175DUG JD (Serial No. 004-112825) – owned by Danron
- Lincoln Gas Welding Machine Model Ranger 250 (Serial No. 11151-U1040423622) – owned by Danron
- Thermal Arc Gas Welding Machine Model Predator (Serial No. A00230A191707D) – owned by Danron
- Mack Truck Model CH613 (VIN 1M2AAY2SW053608) – owned by Brandon and/or Laramie Myers and was included in a parallel litigation which was settled by Plaza

The Policy has multiple coverage parts, including two relevant coverages: (1) the Commercial Automobile Coverage Part; and (2) the Commercial General Liability Coverage Part ("CGL Coverage"). The primary coverage at issue here is the Commercial Automobile Coverage Part which is comprised of (1) the Business Auto Coverage Form and (2) the Garagekeepers Coverage Form Endorsement. Both the Commercial Automobile Coverage Part and the CGL Coverage specify that Plaza will pay all sums an insured is legally obligated to pay as damages because of property damage to which the insurance applies.

Because R & D initially claimed that it owned the Ford F-550 and the Peterbilt described above, those claims were analyzed under the Business Auto Coverage Form which provides coverage for "damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'" A "covered auto" depends on the contents of the Schedules to the Business Auto Coverage Form. Under the Policy, physical damage comprehensive coverage was limited to the specific vehicles listed on the Declarations page for which a premium was paid – that list included five vehicles, none of which were the Ford F-550 or the Peterbilt.

The claims pertaining to the third-party storage of vehicles and equipment at R & D's facility fall under the Garagekeepers Form and the CGL Policy. The Garagekeepers Form provides that:

> [Plaza] will pay all sums the "insured" legally must pay as damages for "loss"
> to a "customer's auto" or "customer's auto equipment" left in the "insured's"

care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under:

a. Comprehensive Coverage From any cause except:
(1) The "customer's auto's" collision with another object; or
(2) The "customer's auto's" overturn.

b. Specified Causes of Loss Coverage Caused by:
(1) Fire, lightning or explosion;
(2) Theft; or
(3) Mischief or vandalism.

c. Collision Coverage Caused by:
(1) The "customer's auto's" collision with another object; or
(2) The "customer's auto's" overturn.

The Garagekeepers Form includes a duty to defend, but Plaza has "no duty to defend any 'insured against a suit' seeking damages for a 'loss' to which this insurance does not apply." The Garagekeepers Form also includes a contractual liability exclusion which excludes "[l]iability resulting from any contract or agreement by which the 'insured' accepts responsibility for 'loss.'"

The CGL Coverage provides that Plaza "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which" the Policy applies. Coverage only exists if the "'property damage' is the result of an 'occurrence' defined as an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions.'"

Pursuant to the Policy, Plaza made payments for the vehicles and equipment owned by R & D, but the claims were denied for those not owned by R & D.

R & D filed a complaint in circuit court on June 21, 2018, alleging Plaza failed to provide coverage to R & D for its losses and engaged in bad faith and breach of contract for failing to provide coverage. In Count One, R & D claimed it suffered loss and destruction to various commercial vehicles it owned, including a "newly acquired" and "not yet licensed" 2006 Ford F-550 and a 2000 Peterbilt, and sought a declaration that Plaza is obligated to pay the claim for the loss of these two vehicles. However, Mr. Cook later admitted during his deposition that these vehicles were owned by Danron Holdings, a successor to Danron, Inc., the real estate company he previously had an interest in with his long-term romantic partner, rather than R & D. In Count Two, R & D claimed it stored various pieces of commercial equipment and vehicles on behalf of Machinery Transport and alleged that the Garagekeepers Endorsement of the Policy requires Plaza to satisfy the claims made against R & D regarding the loss of this commercial equipment by Machinery

3

Transport's Bankruptcy Trustee. R & D also claimed that a Mack Truck owned by a customer, Brandon Myers, was destroyed by floodwaters and that Plaza is obligated for those damages. Counts Three and Four of the Complaint alleged punitive damages and breach of contract claims arising from the losses alleged in Counts One and Two.

Also on June 21, 2018, Laramie A. Myers, d//b/a White Oak Farms filed suit against R & D for the loss of its Mack Truck. Plaza hired an attorney to provide a defense to R & D in this litigation, settled the litigation on R & D's behalf, and fully funded the settlement. Plaza also hired an attorney to defend R & D in litigation filed by Machinery Transport's bankruptcy trustee for recovery of its loss of equipment and vehicles. That proceeding continued until a jury trial found that Machinery Transport could not recover from R & D. Plaza provided a defense to R & D through the resolution of the litigation.

Danron did not file a claim with Plaza for the loss of its equipment or vehicles, or file suit against R & D or Plaza, but Mr. Cook claims that he promised Danron that he would reimburse its losses. He alleges he filed the Complaint on behalf of R & D to seek damages for what Danron could potentially claim against R & D.

On July 29, 2022, Plaza filed its Motion for Summary Judgment in the underlying case. Responsive pleadings were filed and oral argument was held on March 15, 2023, before Plaza's motion was granted in its entirety by order dated May 8, 2023. The circuit court held that it is axiomatic that an entity cannot recover damages for property that it did not own. *Young v. Appalachian Power Co.*, No. 2:07-479, 2008 WL 4571819, at *9 (S.D. W.Va. 2008); *see also Shaffer v. Calvert Fire Ins. Co.*, 135 W. Va. 153, 159, 62 S.E.2d 699, 703 (1950) (holding that if an insured has divested himself of his insurable interest in the property at the time of the loss, he cannot recover.) It is undisputed that R & D did not own the vehicles or commercial equipment at issue, nor have any insurable interest in these vehicles, and the Policy does not provide direct primary coverage for property owned by others. Rather, the circuit court found that the Policy is a liability policy that would only pay out claims for which R & D is legally responsible and no such claims were set forth in Count I of the Complaint or were otherwise developed in discovery, and accordingly, there was no legal obligation or basis for compensation for these losses under the Policy. The circuit court specifically found that R & D's assertions that it wanted a policy with different coverages than the one purchased do not change the terms and conditions of the policy it actually procured, and to the extent such allegations are true, found they had no impact on the analysis of the matter because they would constitute parol evidence. Further, the court found that to the extent such allegations are true, R & D's remedies would lie with their insurance agent, not with Plaza.

The circuit court also found summary judgment on Count II of the Complaint because R & D's allegations that Plaza refused to satisfy the claims asserted against R & D by Machinery Transport and Laramie Myers were false and unsupported by the record. Plaza paid for the defense of the jury trial against Machinery Transport and paid for the

4

defense and settlement of the Myers suit. Summary judgment was awarded on Count III of the Complaint as there was no evidence that Plaza acted in bad faith or breached any duty owed to R & D or otherwise acted maliciously, wantonly, or knew that R & D's claim was proper. Finally, summary judgment was granted on Count IV of the Complaint because the breach of contract claims were essentially identical to the declaratory judgment claims in Counts I and II. The court found there was no breach of the insuring agreement and therefore no common law bad faith claim. It is from this order that R & D now appeals.

Our review of a circuit court's entry of summary judgment is *de novo*. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994). In conducting a *de novo* review, this Court applies the same standard for granting summary judgment that a circuit court must apply: "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser,* 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted).

On appeal, R & D argues that summary judgment was inappropriate for two reasons: first, that there was a disputed issue of fact surrounding the type of insurance coverage Plaza offered to R & D that precludes summary judgment; and second, that there is a material issue of fact as to whether Plaza conducted a reasonable investigation of the claims at issue as R & D requested.[2]

---

[2] Due to R & D's failure to cite to the appendix record in the Statement of the Case or the Argument sections of its brief and its failure to properly cite law in support of its arguments, we remind R & D of the mandates of Rules 10(c)(4) and 10(c)(7) of the West Virginia Rules of Appellate Procedure:

(4) *Statement of the Case*: Supported by appropriate and specific references to the appendix or designated record, the statement of the case must contain a concise account of the procedural history of the case and a statement of the facts of the case that are relevant to the assignments of error.

(7) *Argument*: The brief must contain an argument clearly exhibiting the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific

On the first point, R & D asserts that an affidavit of Ron Cook, submitted below as an exhibit to its response to Plaza's motion for summary judgment, establishes that Mr. Cook requested direct primary coverage from his insurance agent which arguably would have covered the third-party claims at issue herein. Mr. Cook's affidavit asserts that he was told that R & D received direct primary coverage, whereas Plaza maintains that the coverage was for liability only. R & D now asserts that where Mr. Cook's affidavit contradicts Plaza's position on the type of coverage provided under the Policy, a question of fact remains.

We find this argument unpersuasive. Our review of the appendix record establishes that Mr. Cook's affidavit is contradictory to the assertions made in the underlying complaint and to other sworn statements made in related proceedings arising from the 2016 flood event. Submission of such a self-serving affidavit some four years into the litigation does not create a question of fact sufficient to defeat summary judgment. As our Supreme Court of Appeals has noted, "[a] conflict in the evidence does not create 'a genuine issue of fact' if it unilaterally is induced." *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 60 n.12, 459 S.E.2d 329, 337 n.12 (1995). By the same rationale, our Supreme Court has observed "that a court must be free to disregard a conflicting affidavit." *Kiser v. Caudill*, 215 W. Va. 403, 408, 599 S.E.2d 826, 831 (2004). Here, we do not find that Mr. Cook's affidavit creates a genuine issue of material fact sufficient to defeat summary judgment.

In its second point, R & D argues that a material issue of fact exists as to whether Plaza conducted a reasonable investigation of the claim at issue as R & D requested. However, this argument is not clearly developed or supported by either the appendix record or any citation to the law. Instead, R & D puts forth several disjointed and conclusory statements regarding Plaza "simply [sitting] on its hands" and choosing not to investigate, a half-hearted statement implying that perhaps the terms of the Policy are ambiguous, and an unexplained admonition that "this Court should not consider any ruling by the Federal Court as controlling." Accordingly, we deem this argument abandoned as it was not fully briefed. As our Supreme Court has observed, "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996); *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that cursory treatment of an issue is insufficient to raise it on appeal).

---

citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal.

6

Finding no reversible error, we affirm the May 8, 2023, Order Granting Summary Judgment.

Affirmed.

**ISSUED:** July 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear