542 S.E.2d 479

**SYNCOR INTERNATIONAL CORPORATION, Plaintiff Below, Appellee,**

v.

**Joseph M. PALMER, III, State Tax Commissioner Defendant Below, Appellant.**

No. 28397.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2001.

Decided Jan. 26, 2001.

Michael E. Caryl, Bowles, Rice, McDavid, Graff & Love, Charleston, for the Appellee.

Darrell V. McGraw, Jr., Attorney General, Stephen B. Stockton, Assistant Attorney General, Charleston, for the Appellant.

ALBRIGHT, Justice:

The State Tax Commissioner ("Tax Commissioner"), Joseph M. Palmer, appeals from the February 22, 2000, order of the Circuit Court of Cabell County, which reversed an administrative decision upholding the state tax department's position that the sale of nuclear medicines [1] to medical service providers is subject to the state sales tax in all instances. The lower court determined that Appellee Syncor International Corporation ("Syncor"), whose business involves the sale of radiopharmaceuticals, was entitled to the exemption set forth in West Virginia Code § 11–15–9(a)(11) (1997),[2] which applies to "sales of drugs dispensed upon prescription," for its "core" sales.[3] Upon our review of both the statutory language and the applicable regulations, we find no error with regard to the lower court's ruling and accordingly, affirm.

### I. Factual and Procedural Background

In February 1999, Tax Commissioner issued assessments against Syncor for sales of nuclear medicines to various medical service providers in West Virginia that occurred during the period of January 1, 1993, through May 31, 1996.[4] As explained by the administrative law judge ("ALJ"), the sales at issue fell into two categories:

> The first is known as "core" sales and involves unit doses of radiopharmaceuticals prepared for a particular, individual patient pursuant to the prescription of that patient's physician. The second is designated as "bulk" sales and involves sales of larger quantities of nuclear components to hospitals or other professional health care providers as a supply for subsequent use in

preparing specific unit doses for diagnostic testing or therapy of their own individual patients.

Because Syncor conceded at the administrative level that its bulk sales of nuclear medicine were taxable, the only issue before the ALJ was whether its "core" sales were subject to the sales tax. In concluding that the core sales were taxable, the ALJ found determinative the fact that the nuclear medicines were sold to hospitals, clinics, and medical center facilities, and that such medicines were "consumed in the performance of a professional service." [5] Syncor appealed the administrative decision and the circuit court reversed, after determining that the statutory language of West Virginia Code § 11–15–9(a)(11) unambiguously extended an exemption from sales tax payment to the sales of drugs dispensed pursuant to a prescription. Arguing that the ALJ, and not the circuit court judge, correctly analyzed this issue, Tax Commissioner seeks a reversal of the circuit court's ruling.[6]

### II. Standard of Review

As we explained in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Because the single issue on appeal involves an issue of statutory interpretation, our standard of review is *de novo*.

### III. Discussion

The exemption at issue provides relief from the consumer sales tax for "sales of drugs dispensed upon prescription and sales of insulin to consumers for medical pur-

---

**1.** Nuclear medicines are also referred to as radiopharmaceuticals.

**2.** This statutory provision was formerly found in West Virginia Code § 11–15–9(n) (1993). The language of the exemption has not been amended from its 1993 version.

**3.** A "core" sale, as distinguished from a "bulk" sale, involves unit doses of nuclear medicine that are prepared for a particular, individual patient

pursuant to the prescription of a patient's physician.

**4.** The total amount of the assessments was $337,374.

**5.** *See* 110 C.S.R. § 15–92.2.

**6.** The amount of sales taxes at issue correspondent to the core sales is $167,752.

poses." W.Va.Code § 11–15–9(a)(11). The term "drugs" is defined within the consumer sales tax statutory scheme as including "all sales of drugs or appliances to a purchaser, upon prescription of a physician or dentist and any other professional person licensed to prescribe." W.Va.Code § 11–15–2(f) (1998). The regulations mirror this definition by defining "drugs" as including "all sales of drugs ... to a purchaser, upon written prescription of a physician...." 110 C.S.R. § 15–92.1.

The circuit court sets forth a description of a "core" sale in its February 22, 2000, ruling based on the following stipulated facts:

a. An individual patient, as a result of experiencing chest pain, general fatigue or some other symptom of ill health, sees his or her physician to diagnose, cure, prevent and/or treat the suspected ailment.

b. The physician determines the appropriate diagnostic or therapeutic procedure. If suitable, the physician orders a nuclear medicine study as a diagnostic procedure. The physician refers the patient to the nuclear medicine department of a local hospital or clinic for the procedure.

c. The nuclear medicine physician within the hospital or clinic determines the suitable radiopharmaceutical and procedure. The physician issues a verbal, facsimile or electronic prescription to the Plaintiff.

d. At the Plaintiff's pharmacy, one of its nuclear medicine pharmacists receives and transcribes the physician's prescription for the patient. Based on the patient's weight, age and physical condition, the Plaintiff's pharmacist electronically calibrates the unit-dosage and introduces it into a syringe with needle attached, and inserts it into a lead-encased protective tube for transport.

e. A prescription label is printed which includes the name of the Plaintiff's pharmacy, the names of the physician, patient, and hospital or clinic, a prescription number, the name of the particular radiopharmaceutical, the dosage, the date and required time of administration, and other necessary instructions. In some instances, the patient's name is omitted from the label.

f. The unit-dose radiopharmaceuticals are delivered by car to the hospitals and clinics. A licensed nuclear medical technologist, under the direction of a physician, administers the drug to the patient at the appropriate time. The injection allows the radioactive isotope to be carried to the organ targeted for review. The patient then undergoes the imaging or therapeutic procedure. Very sophisticated and expensive imaging equipment captures the gamma rays emitted from the organ and gets a picture for diagnostic purposes.

g. The physician studies or "reads" the image(s) resulting from the procedure, and, based on the image(s), makes a diagnosis of the patient's ailment.

h. The Plaintiff [Syncor] bills the hospital or clinic for the nuclear medicine used. The Plaintiff's bills do not state patient names, but list only specific nuclear medicine purchased from the Plaintiff. Core and bulk sales are separately listed on the same bill. The Plaintiff is unaware of the price which hospitals charge the patients for the radiopharmaceuticals.

Based upon these facts, which clearly demonstrate the use of a prescription in connection with "core" sales, the lower court concluded that Syncor's "core sales of nuclear medicine, being made pursuant to a physician's prescription, are exempt from consumer sales and service tax under W.Va.Code § 11–15–9(a)(11)."

■ In challenging the lower court's ruling, Tax Commissioner suggests that West Virginia Code § 11–15–9(a)(11) only applies when the patient directly buys and self-administers a "drug." In addition, Tax Commissioner relies upon the language used in 110 C.S.R. § 15–92.2, which defines non-exempt sales as those drugs "sold to hospitals ... which are to be consumed in the performance of a professional service." Arguing that all sales of nuclear medicines are "consumed in the performance of a professional service" and that the subject sales are to the hospitals rather than to a patient, Tax Com-

missioner contends that the core sales at issue are fully taxable.

Syncor argues that Tax Commissioner has sought to alter the plain language of the statute through the adoption of self-serving regulations. As support for this position, Syncor cites the language found in 10 C.S.R. § 15–92.2, which provides that: "Drugs sold to hospitals, licensed physicians, nursing homes, etc., which are to be consumed in the performance of a professional service are subject to consumers sales and service tax." By adding the limiting language—"consumed in the performance of a professional service"—Syncor suggests that the state tax department sought to circumscribe the exemption so that it would not apply whenever a drug is sold to a hospital or physician and then administered by a purchaser other than the patient. Through this approach, Syncor contends that the tax department is seeking to tax drug sales that are currently exempted from taxation by the provisions of West Virginia Code § 11–15–9(a)(11).[7]

We explained in syllabus point five of *Appalachian Power Co. v. State Tax Department*, 195 W.Va. 573, 466 S.E.2d 424 (1995), that "[w]hen the language of a statute is clear and unambiguous, an administrative agency's rules and regulations must give such language the same clear and unambiguous force and effect." A corollary to this tenet of statutory construction is that "[a] statute or administrative rule may not, under the guise of interpretation, be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Div'n v. Public Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989). As Syncor argues, the purpose of regulations is to give effect to the governing statute; such regulations cannot be used to alter or narrow the statute's application. *See Boley v. Miller*, 187 W.Va. 242, 246, 418 S.E.2d 352, 356 (1992) (recognizing that agency's statutory interpretation is inapplicable where such interpretation " 'is unduly restricted and in conflict with the legislative intent' ") (quoting Syl. Pt. 5, in part, *Hodge v. Ginsberg*, 172 W.Va. 17, 303 S.E.2d 245 (1983)); *see also* Syl. Pt. 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp, Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981) (holding that "[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous").

It is axiomatic that: "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). In this case, the statutory provisions could not be clearer. All that is required for entitlement to the exemption under West Virginia Code § 11–15–9(a)(11) is (1) a sale; (2) of a drug; (3) that is dispensed upon a prescription.[8] The parties do not dispute the existence of any of these three required elements. The key to whether the exemption found in West Virginia Code § 11–15–19(a)(11) applies in this case, as the circuit court fully appreciated, is whether the drugs at issue were dispensed pursuant to prescriptions.[9] Accordingly, we conclude that the sale of a radiopharmaceuti-

7. While this discussion is prompted by the interpretation advanced by Tax Commissioner (that all nuclear medicine sales are essentially taxable since they are always "consumed in the performance of a professional service"), we acknowledge the possibility that, as the circuit court suggested, the language of 110 C.S.R. § 15–92.2 was enacted merely to differentiate between those drug sales that are dispensed pursuant to prescription (i.e. core) and those that are made without a prescription (i.e. bulk).

8. The statutory interpretation advocated by Tax Commissioner (that the exemption applies solely to individuals who directly purchase and self-administer the drugs) is untenable for two reasons. First, the exemption's application is not stated in terms of who buys the subject "drug;" and second, the exemption's application is not written in terms of whether the drug is self or other-administered.

9. We find no basis in law for Tax Commissioner's contention that the pertinent regulations identify when drugs will be considered to be dispensed pursuant to a prescription. Rather than defining what qualifies as a prescription-type sale, the regulatory provisions emphasize the distinction between those sales pursuant to prescription (the exempt) and those that are sold to medical service providers in bulk form without the issuance of prescriptions (the non-exempt). *See* 110 C.S.R. § 15–92.1–.3.

cal to a medical service provider is exempt from the consumer sales tax under the provisions of West Virginia Code § 11–15–9(a)(11) where the radiopharmaceutical is purchased and dispensed pursuant to a physician's prescription that was prepared for a particular, individual patient.

Based upon the foregoing, the decision of the Circuit Court of Cabell County is hereby affirmed.

Affirmed.