561 S.E.2d 793

CHARTER COMMUNICATIONS VI, PLLC, Plaintiff,

v.

COMMUNITY ANTENNA SERVICE, INC., a corporation, Defendant.

No. 30021.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2002.

Decided Feb. 22, 2002.

Ancil G Ramey, James D. Gray, Hannah B. Curry, Steptoe & Johnson, PLLC, Charleston, West Virginia, Attorneys for the plaintiff.

Robert W. Full, Goodwin & Goodwin, LLP, Parkersburg, West Virginia, Carte P. Goodwin, Goodwin & Goodwin, LLP, Charleston, West Virginia, Attorneys for the defendant.

DAVIS, Chief Justice.

This case presents a certified question from the Circuit Court of Wood County. Briefly stated, the question asks whether W.Va.Code § 24D–2–10 (1999) (Repl.Vol. 2001) permits an exclusivity agreement between an apartment complex and a cable television provider that violates the West Virginia Tenants' Right to Cable Services Act, W.Va.Code § 24D–2–1, *et seq.* We find that W.Va.Code § 24D–2–10 is repugnant to the purpose of the West Virginia Tenants' Right to Cable Services Act and is, therefore, void.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Prior to October 2000, Charter Communications VI (hereinafter "Charter"), the plaintiff herein, had been providing cable services to twenty-two of the twenty-four tenants of Amber Hill Apartments (hereinafter "Amber Hill").[1] On October 10, 2000, Charter discovered that an exclusivity agreement had been entered between Amber Hill and Community Antenna Service, Inc. (hereinafter "Community"), the defendant in this action. The agreement provided, *inter alia*, that Amber Hill's resident manager would receive free premium cable services and, in exchange, Community would have exclusive rights to provide cable services to all of Amber Hill's tenants for a period of two years.[2] Charter learned of the agreement from several of its clients who resided in Amber Hill. The residents had received a correspondence from Community, dated October 10, 2000, announcing that Community would be providing them cable services as of October 20, 2000. The correspondence instructed the residents that, if they were currently customers of another cable provider, they needed to make arrangements for their cable service to be disconnected on October 20, 2000, so that Community could connect the customer to its service.

Charter filed suit against Community on October 20, 2000, seeking, in part, to enjoin Community from severing and/or using Charter's bundle of cable lines servicing Amber Hill.[3] In addition, Charter sought to

---

1. Charter is the successor of Durfee's TV Cable Company. Cable television services were apparently initially established at the Amber Hill complex by Durfee's.

2. The agreement, dated September 28, 2000, was signed by Amber Hill's resident manager as well as its district manager. Amber Hill's district manager signed in the capacity of agent for the owner.

3. Community notes that Charter has asserted additional claims against it that are unrelated to Amber Hill and the question herein certified. Community further explains that it has asserted a counter claim against Charter that is also unrelated to the instant question. Although these ad-

invalidate Community's exclusivity agreement with Amber Hill, arguing that the agreement violated the West Virginia Tenants' Right to Cable Services Act, W.Va.Code § 24D–2–1, *et seq.*, (hereinafter "the Act"). The Circuit Court of Wood County initially entered a temporary restraining order enjoining Community from "cutting any wires, cables or other facilities by which cable television service is now being provided to the Amber Hills Apartments," from "using any cables installed by plaintiff [Charter] within the Amber Hills apartment or otherwise transferring cable television service customers of Charter Communications and its subscribers residing at Amber Hills Apartments...." The circuit court additionally scheduled an evidentiary hearing for October 26, 2000, on Charter's request for a preliminary injunction.

Following the hearing, the circuit court concluded that the agreement between Community and Amber Hill did not violate the Act. The circuit court based its conclusion upon a provision of the Act removing mutual agreements from its terms. The provision relied upon by the circuit court states: "Notwithstanding any provision in this article to the contrary, a landlord and cable operator may by mutual agreement establish the terms and conditions upon which cable television facilities are to be installed within a multiple dwelling premises without having to comply with the provisions of this article." W.Va.Code § 24D–2–10.[4] In accordance with its determination that the agreement between Community and Amber Hill did not violate the Act, the circuit court declined to grant Charter's request for a preliminary injunction. In addition, the temporary restraining order that had been previously en-

tered against Community was dissolved. Charter then filed a motion asking the circuit court to certify a question to this Court regarding the enforceability of a contract such as the one between Community and Amber Hills. The circuit court granted Charter's motion and certified the following question: [5]

> Where one cable operator is already providing cable television services to a multiple dwelling premises without a written mutual agreement between the landlord and the operator, does W.Va.Code § 24D–2–1, *et seq.*, and in particular, W.Va.Code § 24D–2–10, which provides, "Notwithstanding any provision in this article to the contrary, a landlord and cable operator may by mutual agreement establish the terms and conditions upon which cable television facilities are to be installed within in a multiple dwelling premises without having to comply with the provisions of this article," permit a landlord and another cable operator to enter into and enforce a mutual agreement, without obtaining the consent or agreement of all of the residents, whereby the other cable operator is given the exclusive right by the landlord to provide cable television services to all of the residents in the multiple dwelling premises, the terms of which include the other cable operator providing free services to the landlord for the term of the agreement?

The circuit court answered this question affirmatively.

## II.

### CERTIFIED QUESTION

 It is well established that this court has the authority to reformulate certified questions.

---

ditional claims are unrelated to the instant proceeding, they have nevertheless been stayed pending our resolution of the question certified.

**4.** Because the circuit court relied upon W.Va. Code § 24D–2–10 in reaching its conclusion that the Act had not been violated by the agreement between Community and Amber Hill, the court was not required to, and did not, determine whether, in the absence of that provision, the agreement violated any specific sections of the Act.

**5.** Community argues that the instant question is not appropriate for certification. We have considered its argument and "have determined that there is a sufficiently precise and undisputed factual record upon which the legal issues may be resolved, and these issues substantially control the case. Therefore, the questions are properly certified under W.Va.Code § 58–5–2 (1998) [(Supp.2001)] and are within the jurisdiction of this Court." *Zelenka v. City of Weirton,* 208 W.Va. 243, 245, 539 S.E.2d 750, 752 (2000). *Accord Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 431, 504 S.E.2d 893, 894 (1998).

"When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* and *W.Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court." Syl. Pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993).

Syl. pt. 1, *Aikens v. Debow,* 208 W.Va. 486, 541 S.E.2d 576 (2000). In accordance with this authority, we reformulate the instant certified question as follows:

Where one cable operator is providing cable television services to a multiple dwelling premises without a written mutual agreement with the landlord, does the exception to the West Virginia Tenants' Right to Cable Services Act found at W.Va.Code § 24D–2–10 permit the landlord and a second cable operator to enter into and enforce an exclusivity agreement without having to comply with the provisions of the Act?

## III.

## STANDARD OF REVIEW

" 'The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*' Syllabus point 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996)." Syl. pt. 2, *Keplinger v. Virginia Elec. & Power Co.,* 208 W.Va. 11, 537 S.E.2d 632 (2000).

## IV.

## DISCUSSION

The question certified in this action requires us to examine W.Va.Code § 24D–2–10 to determine whether it condones an exclusionary agreement between a landlord and a cable operator that presumptively violates certain provisions of the West Virginia Ten-

ants' Right to Cable Services Act.[6] W.Va. Code § 24D–2–10 appears to authorize such an agreement: "Notwithstanding any provision in this article to the contrary, a landlord and cable operator may by mutual agreement establish the terms and conditions upon which cable television facilities are to be installed within a multiple dwelling premises without having to comply with the provisions of this article." However, any interpretation of this provision must be reconciled with the Legislature's purpose for passing the Act.

" ' "The primary object in construing a statute is to ascertain and give effect to the intent of the legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syllabus point 2, *Anderson v. Wood,* 204 W.Va. 558, 514 S.E.2d 408 (1999)." Syllabus point 2, *Expedited Transportation Systems, Inc. v. Vieweg,* 207 W.Va. 90, 529 S.E.2d 110 (2000).

Syl. pt. 1, *Rhodes v. Workers' Comp. Div.,* 209 W.Va. 8, 543 S.E.2d 289 (2000).

The Legislature has expressly stated its intent with respect to the Act:

The Legislature finds and declares as follows:

(a) Cable television has become an important medium of public communication and entertainment.

(b) It is in the public interest to assure apartment residents and other tenants of leased residential dwellings access to cable television service of a quality and cost comparable to service available to residents living in personally owned dwellings.

(c) It is in the public interest to afford apartment residents and other tenants of leased residential dwellings the opportunity to obtain cable television service of their choice and to prevent landlords from treating such residents and tenants as a captive market for the sale of television reception

6. Charter contends that the agreement between Community and Amber Hill violates three specific provisions of the Act, W.Va.Code §§ 24D–2–3(a)(2) and (c) (1999) (Repl.Vol.2001), and 24D–2–4 (1999) (Repl.Vol.2001). The circuit court has not expressly determined whether the agreement between Community and Amber Hill violated any specific sections of the Act. *See supra* note 4. Consequently, we will not pass upon this question.

services selected or provided by the landlord.

W.Va.Code § 24D–2–1 (1999) (Repl.Vol. 2001). As clearly demonstrated above, the purpose behind the Act is two fold. First, it seeks to provide apartment residents with the right to access their choice of available cable television service at a reasonable price. Second, in reaching this end, it is the goal of the Act to prohibit landlords from treating apartment dwellers as a captive market.

The circuit court's interpretation of W.Va. Code § 24D–2–10, finding that it allows agreements between landlords and cable operators that violate the Act, thwarts the expressed purpose of the Act and renders meaningless numerous of its provisions that go to the heart of that purpose. At least two of the provisions of the Act expressly prohibit certain agreements between landlords and cable operators. For example, W.Va.Code § 24D–2–3(c) prohibits a cable operator from entering an agreement with a landlord that "would have the effect, directly or indirectly, of diminishing or interfering with existing rights of any tenant or other occupant of such building to use or avail himself of master or individual antenna equipment." Similarly, W.Va.Code § 24D–2–4 prohibits landlords from executing certain agreements with cable operators: "[e]xcept as provided in this article, no landlord may demand *or accept* any payment from any cable operator in exchange for permitting cable television service or facilities on or within the landlord's property or multiple dwelling premises." (Emphasis added). These two statutes, in particular, are clearly intended to advance the goal of the Act to safeguard apartment tenants' right to access their choice of cable services at a reasonable cost, and to prevent landlords and cable operators from contracting away those rights. Thus, attempting to reconcile them with W.Va.Code § 24D–2–10 reveals considerable tension between the various provisions.

Acknowledging, to some degree, that W.Va.Code § 24D–2–10 is at odds with the remainder of the Act, Community asserts that the statute is a proviso, the natural function of which is to " 'modify, restrain, or conditionally qualify the preceding subject to which it refers.' " Syl. pt. 1, in part, *State ex rel. Browne v. Hechler,* 197 W.Va. 612, 476 S.E.2d 559 (1996). In this respect, Community contends, the statute should be inconsistent with the Act. We disagree with Community's analysis.

■ Notwithstanding the fact that W.Va. Code § 24D–2–10 is titled "Exception," we agree with Community that it is actually more in the nature of a proviso.[7] We disagree, however, with Community's conclusion that because the statute is a proviso, its complete antagonism with the fundamental purpose of the Act may be excused. Provisos

are construed using the same general criteria of decision applied to other kinds of provisions. However, where there is doubt concerning the extent of the application of the proviso on the scope of another provision's operation, the proviso is strictly construed. The reason for this is that the legislative purpose set forth in the purview of an enactment is assumed to express the legislative policy, and only those subjects expressly exempted by the proviso should be freed from the operation of the statute.

2A Norman J. Singer, *Statutes and Statutory Construction* § 47:08, at 235–38 (6th ed.2000) (footnotes omitted). In the instant case, we find no need to strictly construe the language contained in W.Va.Code § 24D–2–10, as that language is plain. " 'Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syl. pt. 4, *Syncor Int'l Corp. v. Palmer,* 208 W.Va. 658, 542 S.E.2d 479 (2001).

---

**7.** We have previously explained that "[i]n traditional terms, an 'exception' is said to restrict the enacting clause of the statute to a particular case, while a 'proviso' is said to remove special cases from the general enactment and provide for them specially. 1A *Sutherland Statutory Construction* § 20.22 (1972). Such semantical distinctions, however, are of little utility in discerning legislative intent for they are seldom adhered to by legislative draftsmen. *Id.*" *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 317 n. 7, 305 S.E.2d 268, 273 n. 7 (1983), *superseded by statute on other grounds as stated in State ex rel. Hagg v. Spillers,* 181 W.Va. 387, 382 S.E.2d 581 (1989).

From the plain language of W.Va.Code § 24D–2–10, it is readily apparent that the statute is completely inconsistent with the rights the legislature intended to grant apartment tenants and is contrary to specific provisions of the Act that are designed to protect those rights. The Act clearly establishes that landlords and cable operators may *not* enter into certain agreements. Yet, under the operation of W.Va.Code § 24D–2–10, when a landlord and cable operator *do* enter into an agreement they need not comply with the Act. Such a result is illogical and repugnant to the stated purpose of the Act.

■ A well established cannon of statutory construction counsels against such an irrational result. "It is the 'duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.' *State v. Kerns*, 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990)." *Expedited Transp. Sys., Inc. v. Vieweg*, 207 W.Va. 90, 98, 529 S.E.2d 110, 118 (2000). We have also explained that this rule may apply even where the statutory language is plain:

"Although courts should not ordinarily stray beyond the plain language of unambiguous statutes, we recognize the need to depart from the statutory language in exceptional circumstances. 2A G. Sutherland, *Statutory Construction* § 46.07 at 126 (5th ed.1991) (collecting exceptions). Courts, therefore, may venture beyond the plain meaning of a statute in the rare instances in which there is a clearly expressed legislative intent to the contrary, *Russello v. United States*, 464 U.S. 16, 20–21, 104 S.Ct. 296, 299–300, 78 L.Ed.2d 17, 22–23 (1983); in which a literal application would defeat or thwart the statutory purpose, *Commissioner v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75, 82 (1965); *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973, 980–81 (1982); or in which a literal application of the statute would produce an absurd or unconstitutional result, *United States v. Amer. Trucking Ass'ns*, 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345, 1351 (1940). Where warranted a departure must be limited to what is necessary to advance the statutory purpose or to avoid an absurd or unconstitutional result."

*Taylor–Hurley v. Mingo County Bd. of Educ.*, 209 W.Va. 780, 787, 551 S.E.2d 702, 709 (2001) (quoting *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994)). Thus, although the language of W.Va.Code § 24D–2–10 is plain, it may not be read in a way that leads to an absurd, inconsistent, unjust or unreasonable result.

Charter argues that W.Va.Code § 24D–2–10 should be applied to exempt from the operation of the Act only initial installations of cable television services. We find this construction of the statute equally repugnant to the purposes the Act was clearly intended to serve, namely, providing apartment residents with the right to access their choice of available cable television service at a reasonable price and prohibiting landlords from treating apartment dwellers as a captive market. An agreement entered into at the time of an initial installation of cable television services is no less of an impediment to the rights granted to apartment tenants by the Act than an agreement entered into at some later date. Charter's resolution merely eliminates any choice at the outset, rather than removing an existing choice. Therefore, we must reject Charter's analysis.

■ After thoroughly considering W.Va. Code § 24D–2–10, we find no interpretation of the statute that is not repugnant to the Act. "The rule now generally approved is that a proviso which is directly repugnant to the purview or body of the act is inoperative and void for repugnancy." *In re Robert H.*, 199 Conn. 693, 703, 509 A.2d 475, 481 (1986) (citations omitted). *See also Kane v. City of Marion*, 251 Iowa 1157, 1163, 104 N.W.2d 626, 630 (1960) ("a proviso repugnant to the main statute is void"); *American Can Co. v. McCanless*, 183 Tenn. 491, 500, 193 S.W.2d 86, 89 (1946) ("the modern rule is that a proviso or saving clause which is directly repugnant to the purview or body of the act is inoperative and void for repugnancy."). *See generally* 73 Am.Jur.2d *Statutes* § 220, at 407 (2001) ("since the office of a proviso is not to repeal the main provisions of the act but to limit their application, no proviso

should be so construed as to destroy those provisions. While there is contrary authority, the general rule is that a proviso which is directly repugnant to the purview or body of the act is inoperative and void for repugnancy." (footnotes omitted)); 82 C.J.S. *Statutes* § 370, at 493 (1999) ("a proviso is not to be so construed as to make it plainly repugnant to the body of the provision it limits, and a proviso which is directly repugnant to the purview or body of the act is inoperative and void."). In this regard, it has been observed that "[t]he legislature cannot be presumed to destroy at birth its own enactment." Singer, *supra,* § 47:09, at 241 (footnote omitted).

■ In accordance with the foregoing authority, we hold that W.Va.Code § 24D–2–10 (1999) (Repl.Vol.2001) is repugnant to the stated intention of the Legislature in enacting the West Virginia Tenants' Right to Cable Services Act and is, therefore, inoperative and void. Consequently, a landlord and cable operator may not enter into and enforce an agreement that does not comply with the provisions of the Act.

## V.

## CONCLUSION

Because we have found W.Va.Code § 24D–2–10 to be void as repugnant, it is now clear that a landlord and a cable operator may not enter into and enforce any agreement that does not comply with the provisions of the Act. The certified question is answered in the negative.

Certified question answered.

Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.

Judge TOD J. KAUFMAN, sitting by temporary assignment.