632 S.E.2d 358

STATE of West Virginia ex rel. Lola CRIST, Petitioner,

Sago Mine Widows, Intervenors,

v.

Jane CLINE, Insurance Commissioner, and Ranger Construction Industries, Inc., Respondents.

State of West Virginia ex rel. Kathy Sweet and Diana Dickerson, Petitioners,

Sago Mine Widows, Intervenors,

v.

Jane Cline, Insurance Commissioner, and Meadow River Coal Company, and Lightning Contract Services, Respondents.

State of West Virginia ex rel. Georgette Carte, Sherry Grubb, and Jackie Jenkins, Petitioners,

Sago Mine Widows, Intervenors,

v.

Jane Cline, Insurance Commissioner, Respondent.

Nos. 33056, 33057, 33058.

Supreme Court of Appeals of West Virginia.

Submitted May 10, 2006.

Decided June 12, 2006.

Concurring Opinion of Justice Maynard June 14, 2006.

R. Scott Marshall, Robert W. Gillikin, II, Peirce, Raimond & Coulter, P.C., Pittsburgh, Pennsylvania, Attorneys for the Petitioner.

David L. Stuart, Charleston, Attorney for Respondent Jane Cline, Insurance Commissioner.

Robert F. Cohen, Jr., Cohen, Abate & Cohen, L.C., Allan N. Karlin, Morgantown, Hunter B. Mullens, Mullens and McGuire, PLLC, Philippi, Attorneys for the Intervernors.

Stephen P. New, Beckley, Attorney for the Petitioners.

John H. Skaggs, Hoyt Eric Glazer, The Calwell Practice, PLLC, Charleston, Attorneys for the Petitioners.

DAVIS, Chief Justice:

In this consolidated proceeding invoking the original jurisdiction of this Court, numerous individuals, who were granted dependents' death benefits under the West Virginia Workers' Compensation system following the deaths of their spouses, petition for a writ of mandamus to compel the State Insurance Commissioner to apply W. Va.Code § 23–4–10(b) (2005) (Repl.Vol.2005)[1] to continue dependents' death benefits until their death or remarriage. Granting the writ would invalidate a policy[2] that terminated dependents' death benefits paid to widows or widowers on the date their deceased spouse would have become ineligible to receive

---

1. Although we refer to the most recent version of W. Va.Code § 23–4–10(b), it remains identical to the 2003 version subsection (b). It was the 2003 statutory amendment that prompted the adoption of the policy at issue herein.

2. This policy, Policy Statement 2.02—2003, was adopted on March 10, 2004, by the Workers' Compensation Commission. Thereafter, on January 1, 2006, the Workers' Compensation Commission was dissolved. "Authority to enforce the existing rules and the regulatory functions of the commission as set forth in chapter twenty-three [§§ 23–1–1 et seq.] of the code [was transferred] from the commission to the insurance commissioner effective upon termination of the commission." W. Va.Code § 23–2C–22 (2005) (Repl. Vol.2005). See also W. Va.Code § 33–2–21 (2005) (Supp.2005) (titled "Authority of Insurance Commissioner to regulate workers compensation industry; authority of Insurance Commissioner to administer chapter twenty-three of the Code of West Virginia"). Thus, the Insurance Commissioner, as the administrator of the Workers' Compensation Old Fund is the real party in interest and the respondent to this action. The successor organization of the West Virginia Workers' Compensation Commission, and therefore the administrator of the Workers' Compensation New Fund, is the West Virginia Employers Mutual Insurance Company d/b/a/ BrickStreet Mutual Insurance Company (hereinafter referred to as "BrickStreet"). Because the claims of the petitioners herein were granted by the Workers' Compensation Commission (or its predecessor the Workers' Compensation Division), BrickStreet is not a party to this action. BrickStreet has, however, also been made a third-party ad-

ministrator of the Old Fund. See *infra* note 8 for reference to statute assigning BrickStreet as third-party administrator of Old Fund.

Pursuant to the West Virginia Code,

"Old fund" shall mean a fund held by the state treasurer's office consisting of those funds transferred to it from the workers' compensation fund or other sources and those funds due and owing the workers' compensation fund as of the thirtieth day of June, two thousand five, that are thereafter collected. The old fund and assets therein shall remain property of the state and shall not novate or otherwise transfer to the company.

W. Va.Code § 23–2C–2 (1) (2005) (Repl.Vol. 2005). The term "company," as used in the last sentence of the foregoing quote, is a reference to BrickStreet. See W. Va.Code § 23–2C–2(d) (defining the term "Company" as used in chapter twenty-three of the West Virginia Code). Additionally,

"New fund" shall mean a fund owned and operated by the commission and, upon termination of the commission, the successor organization of the West Virginia workers' compensation commission and shall consist of those funds transferred to it from the workers' compensation fund and any other applicable funds. New fund shall include all moneys due and payable to the workers' compensation fund for the quarters ending the thirtieth day of September, two thousand five and the thirty-first day of December, two thousand five, which have not been collected by the workers' compensation fund as of the thirty-first day of December, two thousand five.

W. Va.Code § 23–2C–2(j).

Workers' Compensation Permanent Total Disability benefits.[3] After careful consideration of the parties' briefs, oral arguments, and the relevant statutes, we grant the writ.

## I.

### FACTUAL AND PROCEDURAL HISTORY

During the 2003 Second Extraordinary Session of the West Virginia Legislature, Senate Bill 2013 was passed.[4] Thereafter, the Workers' Compensation Commission adopted Policy Statement 2.02—2003, which was made effective on March 10, 2004. Policy 2.02 states, in relevant part:

Purpose: To conform internal operating procedures to the requirements of Senate Bill 2013, passed on July 1, 2003, during the Second Special Session of the Legislature.

**Policy Statement:** When a personal injury suffered by an employee in the course of and resulting from his or her employment causes death, and disability is continuous from the date of the injury until the date of death, and when occupational pneumoconiosis or any other occupational disease causes death, dependent benefits shall be paid as follows:

. . . .

**A. IF THE DECEDENT HAD BEEN AWARDED AN "OLD LAW" PTD (A PTD AWARDED BEFORE JULY 1, 2003 WITH A DOI BEFORE MAY 12, 1995), THEN THE FOLLOWING SHALL APPLY:**

| Order of Preference | Dependent | Duration |
|---|---|---|
| 1. | Widow or widower | Until death or remarriage. |

. . . .

**B. IF THE DECEDENT HAD BEEN AWARDED A "NEW LAW" PTD (A PTD AWARDED BEFORE JULY 1, 2003 WITH A DOI ON OR AFTER MAY 12, 1995 THROUGH JUNE 30, 2003), THEN THE FOLLOWING SHALL APPLY:**

| Order of Preference | Dependent | Duration |
|---|---|---|
| 1. | Widow or widower | Until death or remarriage, or until the decedent would have turned 65, which ever occurs first. |

3. As will be discussed more thoroughly in this opinion, the Insurance Commissioner has issued a letter directing BrickStreet Administrative Services, as third-party administrator of the Workers' Compensation "Old Fund," to restore benefits that were terminated pursuant to Policy 2.02—2003, and to cease application of that policy. Our determination that we should nevertheless address the technically moot issue herein raised is discussed *infra* in Section III(A) of this opinion.

4. Senate Bill 2013 provides, in relevant part

For all awards of permanent total disability benefits that are made on or after the second day of February, one thousand nine hundred ninety-five, including those claims in which a request for an award was pending before the division or which were in litigation but not yet submitted for a decision, then benefits shall be payable until the claimant attains the age necessary to receive federal old age retirement benefits under the provisions of the Social Security Act, 42 U.S.C. § 401 and 402, in effect on the effective date of this section. . . .

This provision has been promulgated at W. Va. Code § 23–4–6(d) (2005) (Repl.Vol.2005). Senate Bill 2013 also contains a provision requiring that "[f]or any permanent total disability award made after the amendment and reenactment of this section in the year two thousand three, permanent total disability benefits shall cease at age seventy years." This provision has been promulgated at W. Va.Code § 23–4–6(n)(2).

. . . .

**C. IF 1) THE DECEDENT WAS AWARDED A PTD ON OR AFTER JULY 1, 2003, OR 2) THE DECEDENT DIES (BEFORE OR AFTER 7/1/03) WITHOUT A PTD AWARD AND A DEPENDENT BENEFIT AWARD IS THEREAFTER AWARDED THE FOLLOWING SHALL APPLY:**

| Order of Preference | Dependent | Duration |
|---|---|---|
| 1. | Widow or widower | Until death or remarriage, or until the decedent would have turned 70, which ever occurs first. |

Several dependents whose claims fell under either subsection "B" or "C" of Policy 2.02—2003 filed motions for a writ of mandamus in this Court to compel the Insurance Commissioner to comply with W. Va.Code § 23–4–10(b),[5] the statute pertaining to the payment of dependents' death benefits, which they claim is contrary to the Commission's policy. Specific facts related to the individual petitioners follow.

### A. Lola Crist

Mrs. Lola Crist's husband, Mack Crist, applied for Workers' Compensation Occupational Pneumoconiosis benefits on May 7, 1998. His application was granted by order of the Workers' Compensation Commissioner dated May 11, 1999. Mr. Crist died of respiratory failure on April 5, 2002, at the age of forty-nine. Thereafter, on June 10, 2002, Mrs. Crist filed a claim for dependents' death benefits. Her application was granted by order entered on March 18, 2003. The order expressly provided that "checks will continue for the rest of your life or until you remarry." Nevertheless, by subsequent order dated March 16, 2005, the Workers' Compensation Commission informed Mrs. Crist that her dependents' death benefits would terminate on or before June 30, 2017, the date upon which her late husband would have turned sixty-five.

### B. Kathy Sweet

Mrs. Kathy Sweet's husband, William R. Sweet, died on May 12, 1995, at the age of fifty-four, as a direct and proximate result of a work related accident. Mrs. Sweet then filed a claim for dependents' death benefits pursuant to W. Va.Code § 23–4–10, which benefits were granted by order dated August 22, 1995. The order included a statement informing Mrs. Sweet "[y]ou are entitled to these benefits for the remainder of your life or until you remarry." Mrs. Sweet began receiving payments in accordance with the order in or around August 1995. By letter dated January 24, 2005, Ms. Sweet was notified by the Workers' Compensation Commission that her dependents' death benefits would terminate on December 31, 2006, the date upon which her husband would have reached the age of sixty-five.

### C. Diana Dickerson

Similarly, Mrs. Diana Dickerson filed a claim for dependents' death benefits one

---

**5.** W. Va.Code § 23–4–10 is titled "Classification of death benefits; 'dependent' defined," and states in relevant part:

In case a personal injury, other than occupational pneumoconiosis or other occupational disease, suffered by an employee in the course of and resulting from his or her employment, causes death, and disability is continuous from the date of the injury until the date of death, or if death results from occupational pneumoconiosis or from any other occupational disease, the benefits shall be in the amounts and to the persons as follows:

. . . .

(b) If there are dependents as defined in subdivision (d) of this section, the dependents shall be paid for as long as their dependency continues in the same amount that was paid or would have been paid the deceased employee for total disability had he or she lived. The order of preference of payment and length of dependence shall be as follows:

(1) *A dependent widow or widower until death or remarriage of the widow or widower,*

. . . .

(Emphasis added).

week following her husband's death. The benefits were granted by order dated November 3, 1999. The order expressly stated to Mrs. Dickerson "[t]hese checks will continue for the rest of your life or until you remarry." Mrs. Dickerson began receiving monthly payments in accordance with the order in or around November 1999. By letter dated January 14, 2005, Mrs. Dickerson was notified by the Workers' Compensation Commission that her dependents' death benefits would terminate on February 28, 2005, the date her husband would have reached the age of sixty-five.

### D. Georgette Carte

Mrs. Georgette Carte's husband, Robert Carte, died in December 1997 as a result of severe burns and injuries he sustained in the course of his employment as an electrician. Mrs. Carte applied for and was granted dependents' death benefits.[6] By letter dated January 19, 2005, Mrs. Carte was notified that her dependents' death benefits would terminate on July 31, 2006, the date her husband would have reached age sixty-five. Mrs. Carte protested the decision.[7]

### E. Sherry Grubb

Mrs. Sherry Grubb is the widow of Mr. Wetzel Grubb. During his lifetime, Mr. Grubb filed a Workers' Compensation claim for occupational pneumoconiosis, but he did not receive a Permanent Total Disability award. Mr. Grubb died on June 7, 2001, at age sixty-two. Mrs. Grubb then applied for and received Workers' Compensation dependents' death benefits. The date of the award was May 20, 2002. However, by subsequent order dated January 14, 2005, Mrs. Grubb's dependents' death benefits were ordered to terminate on February 28, 2005, the date on which Mr. Grubb would have reached age sixty-five. Mrs. Grubb protested the order. By decision dated July 27, 2005, the Workers' Compensation Office of Judges reversed the

order. Nevertheless, continued payments to Mrs. Grubb were denied. Mrs. Grubb then filed her petition for writ of mandamus in this Court.

### F. Jackie Jenkins

Jackie Jenkins' wife, Patricia Jenkins, died on December 14, 1996. Mr. Jenkins subsequently filed a petition for dependents' death benefits, but the Commission denied an award based upon a report by the Occupational Pneumoconiosis Board recommending no benefits. After a lengthy appeal process, this Court ultimately granted Mr. Jenkins an award of dependents' death benefits. The Commission acknowledged this Court's order on November 26, 2002, and began paying dependents' death benefits to Mr. Jenkins. However, by subsequent order dated January 14, 2005, the Commission ruled that Mr. Jenkins' dependents' death benefits would terminate on February 28, 2005, the date his wife would have reached retirement age. Mr. Jenkins' protested the order, but no ruling on his protest had been made at the time the instant petition for writ of prohibition was filed in this Court.

### G. Subsequent Facts

By Order dated October 6, 2005, this Court consolidated the various petitions for writ of prohibition for purposes of our review. We issued a rule to show cause with respect to the consolidated petitions on March 29, 2006. In April 2006, the Governor of the State of West Virginia directed Jane L. Cline, Insurance Commissioner for the State of West Virginia and Administrator of the Workers' Compensation Old Fund, to reinstate dependents' death benefits that had been terminated based upon Policy Statement 2.02—2003. By letter dated April 17, 2006, Insurance Commissioner Cline directed BrickStreet Administrative Services, as third-party administrator[8] of the Workers' Compensation Old

---

**6.** The date of the award was not provided by Mrs. Carte.

**7.** No ruling on the protest had been rendered at the time this case was submitted to this Court.

**8.** BrickStreet was made third-party administrator of the Old Fund pursuant to W. Va.Code § 23–2C–16(a) (Acts 2005, 5th Ex.Sess., c. 1), which states:

Notwithstanding any provision of this code to the contrary, the company shall be the initial third-party administrator of the Old Fund, Uninsured Employer Fund, Self–Insured Employer Guaranty Risk Pool, Self–Insured Employer Security Risk Pool and Private Carrier Guaranty Fund from the termination of the commission and thereafter for a term of at least six months but not more than three years

Fund,[9] to

restore and reinstate all dependents' death benefits that have been terminated pursuant to policy 2.02 of the former Workers' Compensation Commission, and to cease the application of this policy to all claims for dependents' death benefits against the Old Fund.

In addition, BrickStreet Administrative Services is hereby directed to issue payment for all benefits that would have been payable to any dependent claimant but were not paid due to the application of policy 2.02 of the former Workers' Compensation Commission.

That same day, the Workers' Compensation Commission filed a motion to dismiss the consolidated petitions for writs of mandamus and to vacate the rules to show cause. Petitioners Georgette Carte, Sherry Grubb and Jackie Jenkins filed a response opposing the dismissal of their petitions, while petitioner Lola Crist, on May 1, 2006, filed a motion to withdraw her petition for writ of mandamus asserting that she had been made whole by the Insurance Commissioner. For reasons that will be explained below, we denied the motion to dismiss and the motion to withdraw. Meanwhile, on April 28, 2006, a motion to intervene was filed on behalf of the Sago Mine widows.[10] We granted the motion to intervene. We now grant the writ of mandamus.

## II.

## STANDARD FOR WRIT OF MANDAMUS

This Court has explained that

" '[m]andamus lies to require the discharge by a public officer of a nondiscretionary duty.' Point 3 Syllabus, State ex rel. Greenbrier County Airport Authority v. Hanna, 151 W.Va. 479[, 153 S.E.2d 284 (1967) ]." Syllabus point 1, State ex rel. West Virginia Housing Development Fund v. Copenhaver, 153 W.Va. 636, 171 S.E.2d 545 (1969).

Syl. pt. 1, State ex rel. Williams v. Department of Military Affairs, 212 W.Va. 407, 573 S.E.2d 1 (2002). Moreover, "[s]ince mandamus is an 'extraordinary' remedy, it should be invoked sparingly." State ex rel. Billings v. City of Point Pleasant, 194 W.Va. 301, 303, 460 S.E.2d 436, 438 (1995) (footnote omitted). See also State ex rel. Frazier v. Meadows, 193 W.Va. 20, 31, 454 S.E.2d 65, 76 (1994) ("It is well established in this jurisdiction that a writ of mandamus is only granted in extraordinary circumstances."). "The traditional use of mandamus has been to confine an administrative agency or an inferior court to a lawful exercise of its prescribed jurisdiction or 'to compel it to exercise its authority when it is its duty to do so.' Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, 1190 (1943); State ex rel. Frazier v. Meadows, 193 W.Va. 20, 31, 454 S.E.2d 65, 76 (1994)." Billings at 303, 460 S.E.2d at 438.

In establishing the standard which must be met before a court will grant a petition for writ of mandamus, this Court has declared that "[t]o invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy." Syl. pt.

pursuant to an agreement to be entered into between the Insurance Commissioner and the company prior to the termination of the commission. The company shall be paid a reasonable fee for services provided. The company's administrative duties may include, but not be limited to, receipt of all claims, processing said claims, providing for the payment of said claims through the State Treasurer's office or other applicable state agency and ensuring, through the selection and assignment of counsel, that claims decisions are properly defended. The administration of said funds thereafter shall be subject to the procedures set forth in article three, chapter five-a of this code.

See infra note 10 for the definition of the term "company"; and supra note 2 for the definition of the term "Old Fund."

9. See supra note 2 for the definition of the term "Old Fund."

10. The term "Sago Mine Widows" is used to refer to Deborah Hamner, Lynda Anderson, Charlotte Weaver and Pamela Winans. These are four of twelve women who were widowed by what has become commonly known as the "Sago Disaster" where, on January 2, 2006, thirteen coal miners were trapped following an explosion at the Sago Mine in Sago, West Virginia. Only one of the miners survived this tragic event.

2, *Myers v. Barte,* 167 W.Va. 194, 279 S.E.2d 406 (1981). Finally, we note that "the burden of proof as to all the elements necessary to obtain mandamus is upon the party seeking the relief." 52 Am.Jur.2d *Mandamus* § 3 at 271 (2000) (footnote omitted).

## III.

## DISCUSSION

A rather unusual course of events has occurred in this case, which has caused an additional dispute over whether the instant proceeding has been rendered moot. We will first address this preliminary matter, then we will proceed to address the case on its merits.

### A. *Mootness*

■ After this Court issued its rule to show cause, the Governor of West Virginia instructed the Insurance Commissioner to reinstate the dependents' death benefits that had been terminated pursuant to Policy 2.02—2003, and to cease application of the policy to all claims for dependents' death benefits. Thereafter, the Insurance Commissioner issued a letter to the West Virginia Employers Mutual Insurance Company d/b/a BrickStreet Mutual Insurance Company (hereinafter referred to as "BrickStreet") instructing

> BrickStreet Administrative Services, as third party administrator of the Old Fund,[11] to restore and reinstate all dependents' death benefits that have been terminated pursuant to policy 2.02 of the former Workers' Compensation Commission, and to cease the application of this policy to all claims for dependents' death benefits against the Old Fund.

(Footnote added). Additionally, the Insurance Commissioner has issued "WEST VIRGINIA INFORMATIONAL LETTER NO. 157," which announces the "Insurance Commissioner's interpretation and enforcement position as it relates to claims for dependents' death benefits under W. Va.Code § 23-4-10." Like the Insurance Commis-

sioner's letter to BrickStreet, Informational Letter No. 157 similarly directs that

> any insurer transacting workers' compensation insurance in this State, any self-insured employer or employer group that is authorized to self administer claims pursuant to W. Va.Code § 23-2-9(b), and any third party administrator that is adjusting workers' compensation claims in this State shall immediately cease application of the provisions of policy 2.02 that terminate dependents' death benefits at the date on which the deceased employee would have attained the age of 65 or 70. Further, any dependents' death benefits that have been terminated pursuant to these provisions of policy 2.02 shall be restored and reinstated by the appropriate party, and any sums that were not paid because of the application of these provisions shall be promptly paid.

Due to the actions taken by the respondent Insurance Commissioner at the direction of the Governor, she filed a motion to dismiss the consolidated petitions for writs of mandamus and to vacate the rules to show cause arguing that the petitioners can no longer meet the three-part test for the issuance of a Writ of Mandamus. In addition, petitioner Lola Crist filed a motion to withdraw her petition for writ of mandamus contending that, because her dependents' death benefits were not scheduled to terminate until June 30, 2017, the actions of the Insurance Commissioner resolved her claim. For the reasons that follow, we denied both motions.

■ In essence, the Insurance Commissioner and Lola Crist argue that the instant proceeding has been rendered moot by the actions of the Governor and the Insurance Commissioner that have effectuated the relief sought by the various petitioners. This Court has observed that " '[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syllabus Point 1, *State ex rel. Lilly v. Carter,* 63 W.Va. 684, 60 S.E. 873 (1908)."

---

11. See *supra* note 8 for details regarding BrickStreet's appointment as third-party administrator of the Old Fund. See *supra* note 2 for a brief discussion of the termination of the Workers' Compensation Commission; and for the definition of the term "Old Fund."

Syl. pt. 5, *West Virginia Educ. Ass'n v. Consolidated Pub. Ret. Bd.,* 194 W.Va. 501, 460 S.E.2d 747 (1995). Nevertheless, we have also recognized that

[a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.

Syl. pt. 1, *State ex rel. M.C.H. v. Kinder,* 173 W.Va. 387, 317 S.E.2d 150 (1984). We have further explained that

[t]hree factors to be considered in deciding whether to address technically moot issues are as follows: first, the [C]ourt will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. pt. 1, *Israel by Israel v. West Virginia Secondary Sch. Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989). Applying *Israel,* we find two grounds for addressing the instant matter. First, we find the question of when dependents' death benefits should terminate under this State's Workers' Compensation laws to be one of great public interest in that it involves the livelihood and financial security of those whose spouses have died as a result of their employment. Second, we find the issue herein raised to be one that is subject to repetition. While the current executive administration has chosen to apply the statute to provide dependents' death benefits until the death or remarriage of surviving spouses, without guidance from this Court with respect to the proper application of the relevant statute, a future administration could implement a different policy to the detriment of countless widows and widowers. Consequently, we find that the tech-nical mootness of the issue presented in this case does not preclude our consideration thereof.

### B. Dependents' Death Benefits

The petitioners argue that Policy Statement 2.02—2003 is at odds with the statute governing Workers' Compensation dependents' death benefits, W. Va.Code § 23–4–10. We agree.

■■ Policy Statement 2.02—2003 pertains to dependents' death benefits, therefore, it must be consistent with W. Va.Code § 23–4–10, the statute concerning dependents' death benefits.

"It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority." Syllabus Point 3, *Rowe v. Department of Corrections,* 170 W.Va. 230, 292 S.E.2d 650 (1982).

Syl. pt. 3, *Ney v. State Workmen's Comp. Comm'r,* 171 W.Va. 13, 297 S.E.2d 212 (1982). *See also* Syl. pt. 4, *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.,* 206 W.Va. 691, 527 S.E.2d 802 (1999) ("Any rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. Where a statute contains clear and unambiguous language, an agency's rules or regulations must give that language the same clear and unambiguous force and effect that the language commands in the statute."); *Anderson & Anderson Contractors, Inc. v. Latimer,* 162 W.Va. 803, 807–08, 257 S.E.2d 878, 881 (1979) ("Although an agency may have power to promulgate rules and regulations, the rules and regulations must be reasonable and conform to the laws enacted by the Legislature." (citing *State ex rel. Sheppe v. West Virginia Bd. of Dental Exam'rs,* 147 W.Va. 473, 128 S.E.2d 620 (1962))).

■ To determine whether Policy 2.02—2003 is consistent with the law, we examine

the controlling statute, with due regard for the principle that we must endeavor to give effect to the intent of the Legislature. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Even so, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

W. Va.Code § 23–4–10 states in relevant part:

(b) If there are dependents as defined in subdivision (d) of this section, the dependents shall be paid for as long as their dependency continues in the same amount that was paid or would have been paid the deceased employee for total disability had he or she lived. The order of preference of payment and length of dependence shall be as follows:

(1) A dependent widow or widower until death or remarriage of the widow or widower, ....

Apparently, Policy 2.02—2003 relied on that portion of the above quoted language stating that "the dependents shall be paid for as long as their dependency continues *in the same amount that was paid or would have been paid the deceased employee for total disability had he or she lived*." (Emphasis added). We find nothing in the immediately preceding quoted language to indicate that the Legislature intended dependent death benefits to terminate when the deceased spouses' eligibility for Permanent Total Disability benefits would have ceased. The italicized language above plainly relates to the *rate* of payment and not its duration. In fact, the only reference to duration in the foregoing quote is

found in that portion we did not italicize, which states: "the dependents shall be paid *for as long as their dependency continues.*" The statute then goes on to plainly define the length of dependency for different classes of dependents. Relevant to the instant action, the statute states: "[t]he order of preference of payment *and length of dependence* shall be as follows: (1) *A dependent widow or widower until death or remarriage of the widow or widower*, ...."

We find no ambiguity in the foregoing statutory language and thus we are bound to apply, and not construe its plain terms.

"'Where the language of a statute . is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syllabus Point 4, *Syncor International Corp. v. Palmer*, 208 W.Va. 658, 542 S.E.2d 479 (2001).

Syl. pt. 4, *Charter Communications VI, PLLC v. Community Antenna Serv., Inc.*, 211 W.Va. 71, 561 S.E.2d 793 (2002). Finally, we note that the Insurance Commissioner's Informational Letter No. 157 has also rejected the interpretation given to W. Va. Code § 23–4–10 by Policy 2.02—2003.[12] Because the Insurance Commissioner is the Administrator of the Workers' Compensation system in this State, we are entitled to give deference to her interpretation, so long as it is consistent with the plain meaning of the governing statute, as it is in this instance. *Cf,* Syl. pt. 4, *State ex rel. ACF Indus. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999) ("Interpretations as to the meaning and application of workers' compensation statutes rendered by the Workers' Compensation Commissioner, as the governmental official charged with the administration and enforcement of the workers' compensation statutory law of this State, pursuant to W. Va.Code § 23–1–1 (1997) (Repl.Vol.1998), should be accorded deference if such interpretations

12. In this respect, Informational Letter No. 157 states:

It has been determined that policy 2.02 of the former [Workers' Compensation Commission] does not represent the best interpretation of statutory language relating to the duration of payment of dependents' death benefits made

under W. Va.Code § 23–4–10. Rather, the provisions of policy 2.02 that terminate dependents' death benefits at the date on which the deceased employee would have attained the age of 65 or 70 should not apply to these claims....

are consistent with the legislation's plain meaning and ordinary construction.").

▉▉▉ Based upon the foregoing discussion, we now expressly hold that where dependents' death benefits are awarded to a surviving widow or widower pursuant to W. Va.Code § 23–4–10 (2005) (Repl.Vol.2005), such benefits may not be terminated prior to the death or remarriage of the widow or widower. Because the petitioners herein had a clear legal right to the relief they sought, and the Insurance Commissioner had a clear legal duty to provide that relief, we grant the writ of mandamus.[13]

## IV.

## CONCLUSION

Based upon the foregoing analysis, we grant the writ of mandamus.

Writ granted.

MAYNARD, Justice, concurring:

(Filed June 14, 2006)

The majority's decision is correct and reaches the right result and, accordingly, I agree that under our law individuals who were granted dependents' death benefits under the West Virginia Workers' Compensation system following the deaths of their spouses can continue to receive those benefits until their death or remarriage. While I fully concur in the decision of the majority of this Court, I am not sure that it was judicially imperative for this Court to address the issue in light of the fact that the executive branch had already acted to correct the problem. West Virginia Insurance Commissioner Jane Cline and Governor Joe Manchin had already taken decisive action to properly and completely resolve this matter. While it is arguably possible that some future executive might reverse course and change Governor Manchin's decision, that possibility, in reality, is extremely remote and very unlikely.

Therefore, for this reason, I respectfully concur with the majority opinion.

---

**13.** The dependents' death benefit claims of the petitioners to this action were granted prior to the dissolution of the Workers' Compensation Commission and thus are administered by the Insurance Commissioner in her management of the Old Fund. Accordingly, we grant the writ only as to the Insurance Commissioner, who is the only party respondent in this case. However, because the claims of the interveners, the Sago widows, will be administered by BrickStreet under the New Fund, we expressly note that, unless the Legislature should amend the provisions of W. Va.Code § 23–4–10(b) addressed in this opinion, our conclusion with respect to that section is binding on any entity applying the provision to current or future claims for dependents' death benefits. *See* W. Va.Code § 23–2C–20(b) (2005) (Repl.Vol.2005) ("The successor to the commission, private carriers and self-insured employers shall at all times be bound and shall comply fully with all of the provisions of this chapter [Chapter 23 of the West Virginia Code].").